JOHN T. WILLIAMS (JW-9928)
JASON NASH (*admitted pro hac vice*)
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson
Chicago, IL 60601
(312) 268-5767
(312) 268-5801 (fax)

GREGORY T. CASAMENTO (GC-5273)
LOCKE LORD BISSELL & LIDDELL LLP
885 Third Avenue
New York, NY 10119
(212) 947-4700
(212) 947-1202 (fax)

*Attorneys for Defendant*
*Mouawad USA, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

VAN CLEEF & ARPELS, S.A., and
VAN CLEEF & ARPELS, INC.,

                                Plaintiffs,

       vs.

HEIDI KLUM GmbH and
MOUAWAD USA, INC.

                               Defendants.

-------------------------------------------------------------- x

07-CV-11476 (SAS)

**MEMORANDUM IN SUPPORT OF DEFENDANT MOUAWAD USA, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

THE ALLEGATIONS IN THE AMENDED COMPLAINT ....................................... 5

    1.    VCA Has Specifically Alleged Its Different Alhambra Trade
          Dresses In Other Suits ............................................................................. 8

    2.    VCA Described Its Claimed Quatrefoil Shaped Jewelry Trademark
          Before Abandonment. .......................................................................... 10

ARGUMENT ................................................................................................................ 11

THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY FOR
    FAILURE TO STATE A CLAIM .................................................................... 11

I.    THE AMENDED COMPLAINT AGAIN FAILS TO SPECIFICALLY
     ARTICULATE A PROTECTABLE TRADE DRESS ................................. 12

    A.    The Amended Complaint Fails To Meet The Strict Pleading Requirement
          To Specifically Articulate Product Design Trade Dress(es) In Its Different
          Alhambra Lines ....................................................................................... 13

    B.    The Amended Complaint's Alleged Product Design Trade Dress Is
          Nothing More Than An Impermissible Common Generic Shape. ......... 19

    C.    The Amended Complaint's Impermissible Product Design Trade Dress
          Cannot Be Recast As "A Family of Trade Dresses" .............................. 20

II.    THE AMENDED COMPLAINT FAILS TO ALLEGE AN
     UNREGISTERED TRADEMARK ............................................................... 21

    A.    The Amended Complaint Does Not Allege a Single Fact to Support An
          Unregistered Trademark Claim ............................................................... 21

    B.    The Amended Complaint Does Not Specifically Identify the Claimed
          Unregistered Trademark. ......................................................................... 23

    C.    The Amended Complaint Does Not Allege a Single, Consistently Used
          Trademark. .............................................................................................. 24

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Federal Cases**

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619 (6th Cir. 2002)....................................................................................................... 18

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ................................................... 12

*Big Island Candies, Inc. v. Cookie Corner*, 269 F. Supp. 2d 1236 (D. Haw. 2003).................... 19

*Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604 (7th Cir. 1986) ..................................... 22

*Bloom v. United States Gov't*, No. 02 Civ. 2352, 2003 WL 22327163 (S.D.N.Y. Oct. 10, 2003) .................................................................................... 11

*Cartier v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217 (S.D.N.Y. 2004) .......... passim

*Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.3d 162 (2d Cir. 1991) ................................. 21

*Cruise v. Doyle*, No. 07 Civ. 3940, 2008 WL 116703 (S.D.N.Y. Jan. 9, 2008)............................ 12

*Decorations for Generations, Inc. v. Home Depot USA, Inc.*, 128 Fed. Appx. 133 (Fed. Cir. 2005)...................................................................................................... 22

*Doron Precision Sys. v. FAAC, Inc.*, 423 F. Supp. 2d 173 (S.D.N.Y. 2006)................................. 7

*Elements/Jill Schwartz, Inc. v. Gloriosa Co.*, No. 01 Civ. 904, 2002 WL 1492197 (S.D.N.Y. July 15, 2002) ............................................................................... 19, 20

*Elvis Presley Enterprises Inc.*, 50 U.S. P.Q.2d 1632 (Trademark Tr. & App. Bd. 1999) ........... 24

*Foamation, Inc. v. Wedeward Enterprises, Inc.*, 970 F. Supp. 676 (E.D. Wis. 1997)................. 23

*Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539 (6th Cir. 2005)................... 22

*Harris v. New York State Dep't. of Health*, 202 F. Supp. 2d 143 (S.D.N.Y. 2002) ...................... 8

*Island Software and Computer Service, Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005)........................................................................................................ 11

*In re Estate of Presley v. Russen*, 513 F. Supp. 1339 (D. N.J. 1981) ......................................... 24

*Jackson v. Broadcast Music, Inc.*, No. 04 Civ. 5948, 2006 WL 250524 (S.D.N.Y. Feb. 1, 2006).................................................................................... 8

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2d Cir. 1995).................... 14, 18

*Kaempe v. Myers*, 367 F.3d 958 (C.A.D.C. 2004)...................................................................... 11

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. 1997)............ 14, 19, 20

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337 (2d Cir. 1999)................. 23

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108 (2d Cir. 2006) ........................ 21

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 340 F. Supp. 2d 415 (S.D.N.Y. 2004) ......... 12

*Maharishi Hardy Blechman Ltd., v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535 (S.D.N.Y. Dec. 8, 2003)................................................................................... 19

*Malaco Leaf v. Promotion in Motion, Inc.*, 287 F.Supp. 2d 355 (S.D.N.Y. 2003)................. 14, 19

*McArdle v. Mattel Inc.*, 456 F. Supp. 2d 769 (E.D. Tex. 2006)........................................... 22

*Metrokane, Inc. v. Wine Enthusiast*, 160 F. Supp. 2d 633 (S.D.N.Y. 2001) ........................... 5, 12

*MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335 (4th Cir. 2001) ..................................... 24, 25

*Morse-Starrett Products Co. v. Steccone*, 86 F. Supp. 796 (D.C. Cal. 1946) ............................. 22

*Pfizer Inc. v. Astra Pharmaceutical Products, Inc.*, 858 F. Supp. 1305 (S.D.N.Y. 1994) ............. 5

*Pirone v. MacMillan*, 894 F.2d 579  (2d Cir. 1990) ................................................................ 25

*Regal Jewelry Co. Inc. v. Kingsbridge Int'l., Inc.*, 999 F. Supp. 477 (S.D.N.Y. 1998) ............... 19

*Rock and Roll Hall of Fame Museum, Inc. v. Gentile*, 134 F.3d 749 (6th Cir. 1998) ................. 24

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ............................................................................... 5

*Shevy Custom Wigs, Inc. v. Aggie Wigs*, No. 06 Cv. 1657, 2006 WL 3335008
    (E.D.N.Y. Nov. 17, 2006)................................................................................ 18

*Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654 (7th Cir. 1995)...................................... 22

*Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141 (2d Cir. 2003) .......................................................... 5

*Waddington North America Business Trust v. EMI Plastics, Inc.*, No. 02 cv 3781,
    2002 WL 2031372 (E.D.N.Y. Sept. 5, 2002) .................................................. 20

*Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205 (2000) ............................................... passim

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486
    (S.D.N.Y. Dec. 21, 2007)............................................................................... 12

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001).......................................... passim

*Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F. Supp. 2d 506 (S.D.N.Y. 2003)......17

## Treatises

*Restatement (Third) of Unfair Competition* (1995) ................................................................ 13

*McCarthy on Trademarks and Unfair Competition* (4th ed. 2008) ...................................... 15, 22

## Federal Rules

Fed. R. Civ. P. 12(b)(6).................................................................................................. 1, 11, 12

## CERTIFICATION PURSUANT TO THIS COURT'S INDIVIDUAL RULES AND PROCEDURES

Pursuant to this Court's April 14, 2008 Order, on April 28, 2008 counsel for Plaintiffs advised counsel for Defendant, Mouawad USA, Inc. that they will not seek to further amend their Amended Complaint, thus necessitating this Motion to Dismiss.

Defendant, Mouawad USA, Inc. ("Mouawad"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint of Plaintiffs Van Cleef & Arpels, S.A. and Van Cleef & Arpels, Inc. (collectively "VCA") for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

This is a product design trade dress[1] case – in which VCA impermissibly now seeks all-encompassing jewelry trade dress ownership of the generic "symmetrical quatrefoil shaped ornament."

Faced with Mouawad's Fed.R.Civ.P. 12(b)(6) Motion to Dismiss its original Complaint [Dkt. ## 9 and 10], the Amended Complaint now abandons all of VCA's copyright claims which were based on three alleged registered and unregistered copyrights (Count I of the original Complaint); again fails to specifically pled a protectable product design trade dress; and conclusorily attempts to alternatively recast its product design trade dress claim as unregistered trademark infringement without alleging a single supporting fact upon which that claim could be based.

VCA's Amended Complaint now alleges that the well-known jewelry collection launched in April 2003 of Mouawad and Defendant Heidi Klum GmbH ("Heidi Klum Clover Collection") infringes a single overbroad and vaguely alleged product design trade dress - a common, generic quatrefoil (literally "four leaves") shape. The alleged quatrefoil product design trade dress allegedly simultaneously protects most, but not all, of VCA's different, assorted Alhambra jewelry lines, including "Vintage Alhambra," "Alhambra 2000," "Modern Alhambra," "Lucky

---

[1] Product design trade dress is also referred to as "product configuration trade dress."

Alhambra," "Byzantine Alhambra," and "Magic Alhambra" -- which VCA now attempts in the Amended Complaint to collectively characterize as the "VAN CLEEF ALHAMBRA Jewelry Designs." The Amended Complaint's eleven (11) point summation of its alleged product design trade dress amounts only to the outline of the generic quatrefoil shape, along with "a differing center." It is this wholly inadequate product design trade dress description that VCA in the Amended Complaint now terms its "ALHAMBRA QUATREFOIL DESIGN SYMBOL." Nowhere in the Amended Complaint does VCA make any factual allegation that the "ALHAMBRA QUATREFOIL DESIGN SYMBOL" is used by it as a trademark, as opposed to product design trade dress.

The Amended Complaint is defective on its face and must be dismissed as a matter of law. VCA fails to plead specifically articulated, protectable product design trade dress facts necessary to state a trade dress cause of action. Nor should VCA be allowed in this Amended Complaint to alternatively recast its product design trade dress claim as unregistered trademark infringement – presumably in a new attempt to circumvent the product design trade dress requirement of secondary meaning. It is evident from the face of the Amended Complaint that it fails to allege a single claim upon which this Court can grant relief.

**Product Design Trade Dress Claim**

It is critical to address at the outset that the statutory and common law product design trade dress causes of action of Count I and Count II, respectively, are deficient and fail to state a claim on their face for at least two reasons. First, VCA has failed in this Amended Complaint to specifically articulate a protectable trade dress. It is evident from the Amended Complaint's images of the "Exemplary Plaintiffs' Jewelry Pieces" – and obviously telling by even a cursory review of the respective images of "Vintage Alhambra," "Alhambra 2000," "Modern Alhambra,"

2

"Lucky Alhambra," "Byzantine Alhambra," and "Magic Alhambra" referred to in the Amended Complaint and depicted on VCA's website – that the various Alhambra lines pled are distinctly different and inconsistent in appearance. It is pled in the Amended Complaint that "each family member of the Alhambra collection is viewed as a distinctive trade dress" and that the only commonality of alleged product design trade dress among them is the impermissibly broad and generic idea of the symmetrical quatrefoil shape – yet these different trade dresses are not pled. Thus, VCA's own fact recitation in its Amended Complaint defeats its conclusory allegation that it owns one all-encompassing product design trade dress – and VCA fails to specifically plead the different product design trade dress(es) for each of the different Alhambra designs.

Moreover, this impermissible, all-encompassing trade dress now alleged in the Amended Complaint is contradicted by and inconsistent with VCA's multiple sworn allegations in other infringement suits previously filed in this Court and elsewhere describing in detail the combination of claimed unique design elements that comprise its "Alhambra Trade Dress." *See Van Cleef & Arpels Logistics, S.A., et al. v. Landau Jewelry, et al.,* No. 07-CV-564 (SAS); *Van Cleef & Arpels Logistics, S.A., et al. v. Zirconmania, Inc.,* No. 07-CV-565 (SAS); *Van Cleef & Arpels Logistics, S.A., et al. v. JJ Gold Int'l, Inc.,* No. 07-CV-1445 (SAS) (consolidated as Case No. 07-CV-564) ("*Landau*"); *Cartier et al. v. Elena Castaneda and Ejeweler d/b/a Overstockjeweler.com,* No. 07-7862 (SAS), consolidated with *Yurman Studio, Inc. v. Elena Castaneda and Ejeweler LLC d/b/a Overstockjeweler.com,* No. 07-1241 (SAS). This chameleon-like product design trade dress pleading belies as a matter of law VCA's attempt now in the Amended Complaint to drastically expand its claimed trade dress protection to the different, all-encompassing product design trade dress of the generic quatrefoil shape.

3

Second, the "ALHAMBRA QUATREFOIL DESIGN SYMBOL" trade dress now pled here is nothing more than an impermissable overbroad and generic recitation of the common symmetrical quatrefoil shape. Product design trade dress pled on this broad and generic level is not protectable -- whether pled for respective individual Alhambra lines or as a trade dress "family." Accordingly, VCA's product design trade dress Counts must be dismissed with prejudice as a matter of law.

**Unregistered Trademark Claim**

VCA's new attempt in this Amended Complaint to confuse its product design trade dress allegations by pleading in conclusory fashion in Counts I and II that its "ALHAMBRA QUATREFOIL DESIGN SYMBOL" product design trade dress is simultaneously and without more also "legally cognizable" "as an unregistered design trademark" that is "inherently distinctive" fails on its face for at least three reasons. First, the Amended Complaint does not allege a single fact that is claimed to support its use of an Alhambra unregistered trademark beyond the claimed product design trade dress – but instead seeks to merge without explanation two separate and distinct concepts protected by the Lanham Act. Second, even if VCA could characterize its alleged product design trade dress concurrently as an unregistered trademark, the Amended Complaint does not specifically identify - in image or words - what that mark is claimed to be. This is not surprising given that in VCA's recent application for trademark registration for jewelry of that geometric shape, VCA described under oath and in detail the claimed elements of the proposed mark. That October 30, 2007 application was abandoned on December 12, 2007, and VCA abandons in the Amended Complaint any attempt to specify its alleged trademark. Third, as set forth, *supra*, even if the Amended Complaint's images of the "Exemplary Plaintiffs' Jewelry Pieces" - and the respective different images of "Vintage

Alhambra," "Alhambra 2000," "Modern Alhambra," "Lucky Alhambra," "Byzantine Alhambra," and "Magic Alhambra" referred to in the Amended Complaint and depicted on VCA's website – could be construed to be VCA's simultaneous "trademark," the claim fails as matter of law because the various Alhambra lines pled are distinctly different and not consistent in use and appearance.

<strong><u>THE ALLEGATIONS IN THE AMENDED COMPLAINT[2]</u></strong>

Defendants Mouawad and Heidi Klum GmbH have created, designed, manufactured, sold, offered for sale and/or distributed jewelry products "embodying the ALHAMBRA QUATREFOIL DESIGN SYMBOL." (Am. Compl. ¶ 23.) Utterly absent from VCA's Amended Complaint is any allegation identifying either specific VCA products that are alleged to be infringed or any particular Heidi Klum Clover Collection jewelry pieces which are claimed to be infringing.[3]

**Product Design Trade Dress Allegations**

The Amended Complaint alleges that its "VAN CLEEF ALHAMBRA Jewelry Designs" – comprised of several different lines of jewelry designs including "Vintage Alhambra,"

---

[2] Courts must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff when ruling on a motion to dismiss under Rule 12(b)(6). *Metrokane, Inc. v. Wine Enthusiast*, 160 F. Supp. 2d 633, 636 (S.D.N.Y. 2001) *citing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Therefore, for purposes of this Motion to Dismiss only, Mouawad treats the allegations of the Amended Complaint as true.

[3] VCA's failure to identify any specific Heidi Klum Clover Collection jewelry pieces as infringing – or the date its purported claims accrued – prevents Mouawad from asserting in this Motion to Dismiss other grounds for dismissal. *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (in order to assert trademark protection, a plaintiff must pled and prove use its trademark prior to defendant's use); *see also Pfizer Inc. v. Astra Pharmaceutical Products, Inc.*, 858 F.Supp. 1305, 1329 (S.D.N.Y. 1994) (determination of the scope of alleged family of marks is judged at the time that the junior uses entered the marketplace).

"Modern Alhambra," "Alhambra 2000," "Lucky Alhambra," "Byzantine Alhambra," and "Magic Alhambra" – all have "one dominant, common feature: a symmetrical quatrefoil shaped ornament as a major part of the piece." (Am. Compl. ¶¶ 16, 17.)  The Amended Complaint now dubs this generic shape the "ALHAMBRA QUATREFOIL DESIGN SYMBOL" and alleges that it "is perceived by the public as a symbol of source of both VCA and the jewelry of the Alhambra collection." (Am. Compl. ¶¶ 18, 19.) But VCA's description in the Amended Complaint of its alleged all-encompassing quatrefoil shaped product design trade dress is concurrently generic, vague, overbroad and inconsistent.  The only commonality alleged here between the six different Alhambra jewelry designs is that each are in the shape of a generic symmetrical quatrefoil.  The Amended Complaint's eleven (11) point summation of its alleged product design trade dress merely sets forth the obvious four lobes, outer boundary and inner boundary of a common, generic, geometric quatrefoil shape, along with "a differing center":

The quatrefoil shaped ornament comprises:

1.    four identical lobes;

    2.    each lobe having a semicircular shape;

    3.    the lobes having both left-right and top-bottom symmetry;

4.    an outer band;

    5.    having a constant width;

    6.    the outer surface of the band defining the contour of the ornament;

    7.    the inner surface of the band defining an inner or central portion;

    8.    having four identical cusps (inner points of the lobes) which extend about half way into the ornament;

9.    the inner portion;

    10.    having a quatrefoil shape defined by the inner surface of the outer band; and

6

> 11.    which has a differing center, i.e., one that is either hollowed out or
>        made of a single filling material, such as mother of pearl, onyx,
>        lapis, diamonds or metal, and may include a small centered jewel.

(Am. Compl. ¶ 17.)

The Amended Complaint's initial page depicts four (4) images of unidentified different VCA Alhambra jewelry designs referred to therein as "Exemplary Plaintiffs' Jewelry Pieces." While the Amended Complaint does not include identified images of each of the at least six (6) different Alhambra jewelry lines – "Vintage Alhambra," "Alhambra 2000," "Modern Alhambra," "Lucky Alhambra," "Byzantine Alhambra," and "Magic Alhambra" - even a cursory viewing of VCA's website [4] (www.vancleef-arpels.com) demonstrates that each of them differs from each other in significant detail."[5]   The Amended Complaint alleges that each "is viewed as a distinctive trade dress" (Am. Compl. ¶ 22), but does not plead the specific, different product design trade dress of any of them.  While the Amended Complaint alleges that "Vintage Alhambra" was introduced in 1968, (Am. Compl. ¶ 16), it fails to allege whether the "Alhambra 2000," "Modern Alhambra," "Lucky Alhambra," "Byzantine Alhambra," or "Magic Alhambra" were created or introduced before or after the April 2003 launch of the Heidi Klum Clover Collection.

--------

[4] "For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Doron Precision Sys. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n. 8 (S.D.N.Y. 2006) (internal citations omitted).

[5] VCA's "Alhambra" designs are not confined to the generic quatrefoil shape. VCA's website reveals that "Sweet Alhambra" consists of shapes with beaded borders other than the quatrefoil, including "Sweet Alhambra Medals," "Sweet Alhambra Heart," "Sweet Alhambra Clover," "Sweet Alhambra Butterfly," and "Sweet Alhambra ID Bracelet." Moreover, "Lucky Alhambra" includes several shapes with beaded borders other than the quatrefoil, including a butterfly, a leaf, a heart, and a star.

**Unregistered Trademark Allegations**

The Amended Complaint alleges the bald conclusion that the generic quatrefoil product shape is "an unregistered design trademark" (Am. Compl. ¶ 22), but is utterly devoid of any factual allegation of its use as a trademark -- as opposed to product design trade dress. Nor does the Amended Complaint allege the consistent use of any specifically identified and described trademark -- indeed, the Amended Complaint alleges quite the opposite. The generic quatrefoil product shape is alleged to be "inherently distinctive" as an unregistered trademark (Am. Compl. ¶ 22.)

**Facts For Which Judicial Notice May Be Taken**

This Court is empowered to take judicial notice of the following relevant facts.

> **1.    VCA Has Specifically Alleged Its Different Alhambra Trade Dresses In Other Suits.**

This suit marks the latest in a series of inconsistent and contradictory attempts by VCA in actions pending before this Court to assert product design trade dress protection over the "Alhambra Trade Dress."  *See Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry*; *Van Cleef & Arpels Logistics, S.A. v. Zirconmania, Inc.*; *Van Cleef & Arpels Logistics, S.A. v. JJ Gold International, Inc. d/b/a Lauren G. Adams*, consolidated as Case No. 07-CV-564 (collectively, "*Landau*"); *Cartier et al. v. Elena Castaneda and Ejeweler b/a Overstockjeweler.com*, No. 07-7862 (SAS), consolidated with *Yurman Studio, Inc. v. Elena Castaneda and Ejeweler LLC d/b/a Overstockjeweler.com*, No. 07-1241 (SAS).[6]

------

[6] This Court may take judicial notice of VCA's admissions in its *Landau* and *Overstockjeweler.com* pleadings under Fed. R. Evid. 201(b). *Jackson v. Broadcast Music, Inc.*, No. 04 Civ. 5948, 2006 WL 250524, *7 (S.D.N.Y. Feb. 1, 2006) ("the court may take judicial notice of public records and of 'admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions

In its *Landau* Complaints, VCA identifies the "ALHAMBRA Trade Dress"[7] as:

(a)     Clover-shaped jewelry;

(b)     Having a flat shape;

(c)     Inlaid with translucent or colored material, such as Mother-of-Pearl;

(d)     A beaded metal frame around the clover shape; and

(e)     Having slightly larger beads at the four indented corners of the clover shape.

(*See Landau*, [Dkt. #1] Compl.; *see also, Zirconmania*, [Dkt. #1] Compl.; *JJ Gold International*, [Dkt. #1] Compl.; *see also, Landau*, [Dkt. #45] Plfs' Rev'd. Reply to Defs "Statement of Undisputed Facts" and Statement of Material Facts Pursuant to Local Civil Rule 56.1 at 5-6).

VCA alternatively has recharacterized the trade dress in *Landau* as:

- a quatrefoil-shaped charm or pendant. The quatrefoil shape is not identical to the four-leaf clover found in nature;

- an outer metal border which has fine, half-spherical beading;

- larger beads or 'studs' at each of the four corners of the quatrefoil;

- in-laid material – which may include semi-precious stones such as mother-of-pearl, onyx, corral, lapis lazuli, turquoise, *etc.* which are ground to fit the border… [and] uses consistent stone colors for all quatrefoil charms in a given piece;

- on necklaces and bracelets, the quatrefoil pendants are laid out evenly along a chain, with a particular spacing (about 3 to 4 times the width of the quatrefoil charm). While the chain itself is not especially creative, the placement along the chain is, creating a 'pretty balance' among the piece."

---

in a subsequent action' without converting the motion into one for summary judgment.") *quoting Harris v. New York State Dep't. of Health*, 202 F. Supp. 2d 143, 173 (S.D.N.Y. 2002).

[7] It is significant that VCA has admitted that (referring to at least "Vintage Alhambra," "Magic Alhambra" and "Lucky Alhambra") **"there are several lines of jewelry in the Alhambra jewelry collection."** (*Landau*, [Dkt. #45], Plfs' Rev'd. Reply to Defs "Statement of Undisputed Facts" and Statement of Material Facts Pursuant to Local Civil Rule 56.1 at 6) (emphasis added).

(*See Landau*, [Dkt. #44] Pls' Rev'd. Mem. of Law in Opp. to Defs' Mot. for Summary Judgment and in Support of Its Cross-Mot. for Partial Summary Judgment at 5-6; *see also, Landau*, [Dkt. #45] at 4).  VCA further has conceded in *Landau* that "the Vintage Alhambra Jewelry Design is simply **much more than a 'clover with a frame**," and VCA does not claim protection "**in the quatrefoil shape – which has been known for at least 1000 years – but in a combination of elements[.]**" (*See Landau*, [Dkt. #44] at 14) (emphasis added) - yet this is precisely the protection which this Amended Complaint now disingenuously seeks.  VCA further has attempted to distinguish the *Landau* Defendants' demonstrations of other quatrefoil-shaped jewelry by declaring that "none of the examples provided have the elements of the Vintage Alhambra trade dress; **they all lack the distinctive beading and corner beads**," (*see id*. at 22) (emphasis added), and has conceded that the "Alhambra Trade Dress" "**is much more than a quatrefoil with a border.**" (*See Landau*, [Dkt. #45] at 4) (emphasis added).

Similarly, in the *Cartier et al. v. Elena Castaneda and Ejeweler b/a Overstockjeweler.com*, No. 07-7862 (SAS), consolidated with *Yurman Studio, Inc. v. Elena Castaneda and Ejeweler LLC d/b/a Overstockjeweler.com*, No. 07-1241 (SAS), Amended Complaint, VCA depicts its Alhambra Designs with exhibits of and describes in detail the crucial design elements of its at least seven different "Van Cleef Trade Dress Designs"- each of which are alleged to be individually "unique and distinctive jewelry designs." ([Dkt. # 8], at 13-14; [Dkt. # 8], at Ex. F.)

### 2.    VCA Described Its Claimed Quatrefoil Shaped Jewelry Trademark Before Abandonment.

The Amended Complaint's conclusory – but unsupported - allegation of an unregistered trademark in the common, generic quatrefoil product shape of the different Alhambra jewelry lines, without more, is contradicted by its application to the United States Patent and Trademark

Office ("PTO"), dated October 30, 2007, for trademark protection for a specific quatrefoil jewelry design. *See* Trademark Electronic Search System (TESS), http://tess2.uspto.gov/bin/showfield?f=doc&state=ucchsu.2.1.[8] VCA therein set forth the description of, and multiple specimens depicting, the specific design elements it claimed merited registered trademark protection: "Color is not claimed as a feature of the mark. The mark consists of a three dimensional jewelry element comprising an outer frame surrounding and containing an insert, the outline shape of the frame and insert consisting of four rounded lobes or petals each of the same size and positioned in a symmetrical and quatrefoil pattern; **the upper and lower edges of the frame being decorated with parallel rows of ball shaped elements forming a continuous roping with a larger semi-spherical element positioned at the central most points of such roping.** The stippling is for shading purposes only." (Emphasis added.) *Id.* VCA abandoned this application on December 12, 2007 – nine days before filing the original Complaint here.

## ARGUMENT

## THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY FOR FAILURE TO STATE A CLAIM

VCA has failed to state a claim upon which relief can be granted for either its product design trade dress or unregistered trademark claims alleged in its Amended Complaint, and there are several grounds for the dismissal of both. *See* Fed. R. Civ. P. 12(b)(6).

Rule 12(b)(6) requires dismissal of a claim when the party has failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). While a court must assume as true all

---

[8] This court may take judicial notice of VCA's filings with the PTO. *Island Software and Computer Service, Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005); *Kaempe v. Myers*, 367 F.3d 958, 965 (C.A.D.C. 2004) ("documents recorded by the PTO…are public records subject to judicial notice on a motion to dismiss.")

well-pleaded factual allegations in the complaint, it need not accept conclusory allegations when ruling on a motion to dismiss under Rule 12(b)(6). *See, e.g., Bloom v. United States Gov't*, No. 02 Civ. 2352, 2003 WL 22327163, *6 (S.D.N.Y. Oct. 10, 2003) (Conclusory allegations "are plainly insufficient to prevent a Rule 12(b)(6) dismissal.")

If a plaintiff fails to plead *any* essential element of a claim for which it seeks relief, such a claim should be dismissed. *See Cruise v. Doyle*, No. 07 Civ. 3940, 2008 WL 116703, *2 (S.D.N.Y. Jan. 9, 2008) ("Dismissal is proper where a plaintiff fails to plead the basic elements of a claim.") Thus, to survive a motion to dismiss under Rule 12(b)(6), a complaint must plead enough facts to plausibly suggest that the plaintiff will be entitled to relief; a mere possibility that plaintiff might some day be able to find facts is not enough. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 494-95 (S.D.N.Y. Dec. 21, 2007). Further, a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S. Ct. at 1964-65; *World Wrestling Entm't* at 494. When deciding a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider "documents referenced in the complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied on in their suit" and "matters of which judicial notice may be taken." *Metrokane, Inc. v. Wine Enthusiast*, 160 F. Supp. 2d 633, 636-37 (S.D.N.Y. 2001).

## I.     THE AMENDED COMPLAINT AGAIN FAILS TO SPECIFICALLY ARTICULATE A PROTECTABLE TRADE DRESS

The Amended Complaint fails as a matter of law to allege a claim for product design trade dress infringement under the Lanham Act. [9]   Controlling authority in this Circuit,

---

[9] The elements necessary to prevail on common law causes of action for trademark infringement and unfair competition "mirror the Lanham Act claims." *Louis Vuitton Malletier v. Dooney &*

including *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001) ("*PAJ*") and a host of

other decisions, requires that VCA specifically articulate the particular design elements that are

consistently expressed within each of VCA's distinctly different "Vintage Alhambra," "Modern

Alhambra," "Alhambra 2000," "Lucky Alhambra," "Byzantine Alhambra," and "Magic

Alhambra" jewelry lines and allegedly protected by trade dress.

While VCA has specifically plead its product design trade dress in its other suits

involving, among others, its product line Vintage Alhambra, in an apparent quest for market

exclusivity the Amended Complaint here ignores this pleading requirement and vaguely alleges a

new drastically expanded, all-encompassing product design trade dress encompassing each of its

at least six (6) different Alhambra jewelry lines which merely describes the idea of a common,

generic geometric shape – the symmetrical quatrefoil. VCA may not successfully plead as a

collective product design trade dress for each of its Alhambra lines that which will not support a

claim for any of them individually.

### A.    The Amended Complaint Fails To Meet The Strict Pleading Requirement To Specifically Articulate Product Design Trade Dress(es) In Its Different Alhambra Lines.

Trade dress "originally included only the packaging, or 'dressing,' of a product," but it

has been expanded," *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000), to

encompass what is at issue in the Amended Complaint: the design or configuration of the

product itself.  But Courts exercise "particular caution" when extending protection to claimed

product design trade dress because product design almost invariably serves purposes other than

source identification, *PAJ* at 114-15, and "almost invariably, even the most unusual of product

---

*Bourke, Inc.* 340 F. Supp. 2d 415, 436 (S.D.N.Y. 2004). In addition, to succeed on the merits of an unfair competition claim, a plaintiff 'must couple its evidence supporting liability under the Lanham Act with additional evidence demonstrating "the defendant's bad faith." *Id.*

designs such as a cocktail shaker shaped like a penguin – is intended not to identify the source" of the product, "but to render the product itself more useful or more appealing." *Id.; citing Samara Bros.,* 529 U.S. at 213. *See also Restatement (Third) of Unfair Competition § 16 cmt.b* at 159 (1995) ("Product designs are more likely to be seen merely as utilitarian or ornamental aspects of the goods.") *See also Malaco Leaf v. Promotion in Motion, Inc.,* 287 F.Supp. 2d 355, 363 (S.D.N.Y. 2003); *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 380 (2d Cir. 1997); *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 33 (2d Cir. 1995). While all trade dress claims raise a potent risk that relief will impermissibly afford a level of "protection that would hamper efforts to market competitive goods,"... "granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves." *PAJ* at 115. Thus a plaintiff asserting product design trade dress, as opposed to trademark or trade dress packaging, must overcome "additional hurdles" – for example, product design trade dress cannot be inherently distinctive and secondary meaning must be pled and proved. *Samara* at 215; *PAJ* at 115.

Moreover, the scrutiny given to allegations of product design trade dress infringement in an **entire line of products** "applies with equal or greater force." *PAJ* at 116 -17 (emphasis added). Plaintiff is required to plead that the "overall look" in each separate product is "consistent." *PAJ* at 116. Concern for protecting competition in this context is "particularly acute," as "it is too easy for the question of design and configuration ("overall look") to degenerate into a question of quality, or beauty, or cachet." *PAJ* at 116-17. In such situations the Court's "concern for protecting competition is acute." *Landscape Forms,* at 380. Thus, the focus on the overall look of a line of products does not permit a plaintiff to dispense with *an articulation of the specific elements* which comprise its distinct product design trade dress. *PAJ*

at 117 (emphasis added.)  The *PAJ* decision listed four reasons why a vague and indefinite definition of trade dress would present unacceptable results: (1) different jurors viewing the same line of products may conceive the trade dress to be composed of different features; (2) no fact finder can properly evaluate issues of secondary meaning, over-breadth or functionality "without knowing precisely what the plaintiff is trying to protect;" (3) the plaintiff's inability to articulate a precise definition may indicate that the alleged "product trade dress" is overbroad in that it is merely an idea or a generic concept; and (4) a narrowly tailored injunction cannot be framed. *PAJ* at 117; 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §§ 8:3 (4th ed. 2008) ("*McCarthy*").

All of these concerns are implicated by the Amended Complaint's failure to specifically allege product design trade dress for any of the at least six Alhambra lines. The prospect of an impermissible monopoly is even more acute given that the Court may take judicial notice that VCA already has plead in its other suits before this Court more specific product design trade dress for at least its Vintage Alhambra line (from which it seemingly seeks to escape in this case) and admitted that "there are several lines of jewelry in the Alhambra jewelry collection," and that VCA's website confirms that the various Alhambra lines referred to in the Amended Complaint are different and inconsistent in appearance.  VCA could not – and did not attempt to – in its other suits sustain a product design trade dress claim for any of these at least six (6) different Alhambra lines individually by the broad and generic allegations here.  The allegations simply do not become permissible when plead across multiple VCA Alhambra lines.  Any other conclusion leads inexorably to a monopoly for VCA in all symmetrical quatrefoil jewelry and the elimination of marketplace competition.

In *PAJ*, the plaintiff, well-known jeweler David Yurman Design ("Yurman"), alleged a single generic trade dress -- "the artistic combination of cable [jewelry] with other elements" – that it claimed applied to eighteen (18) separate jewelry pieces (eight rings, seven bracelets, and three pairs of earrings) that allegedly formed a single jewelry line – four of which were claimed to be separately copyrightable. *See PAJ*, 262 F.3d at 117-18. Examining Yurman's alleged trade dress, the Second Circuit held, "just as copyright law does not protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance." *Id.* at 115. The court then rejected Yurman's trade dress claims as an unprotected idea, holding that the alleged trade dress description "failed to identify the specific design elements," in the jewelry pieces entitled to trade dress protection. *Id.* at 118.

Like Yurman in *PAJ*, VCA in the Amended Complaint impermissibly seeks to unify at least six distinctly different jewelry lines into one single Alhambra product design trade dress – the idea of a symmetrical quatrefoil shape. This is nothing more than an attempt at market monopolization. *Id.* at 115. Random-House Unabridged Dictionary defines quatrefoil as "a panellike ornament composed of four lobes, divided by cusps, radiating from a common center." VCA's alleged product design trade dress in the Amended Complaint simply describes this common, generic shape by merely restating the quatrefoil's dictionary definition with specific inclusion of necessary geometric aspects, such as its inner and outer boundaries.

VCA may argue that the inconsistencies in its factual allegations, or with its representations in the *Landau* case, are supported by the *Cartier* decision – prosecuted by VCA's counsel here – which held that a group of several watches with the same basic design, but with minor variations in strap, size, bracelet, dials, metals used or diamond settings may be protected as a product line by a single trade dress. *See Cartier v. Four Star Jewelry Creations, Inc.*, 348 F.

Supp. 2d 217, 222 (S.D.N.Y. 2004). *Cartier*, however, compels the opposite result – dismissal of VCA's claims as a matter of law.

In *Cartier*, the plaintiff pled – unlike here – highly detailed allegations characterizing the entire product design for four individual watch lines and all common elements within the respective lines, including the "Tank Francaise" and "Tank Americaine" which were characterized as individual product lines in a larger group of "Tank-style" watches each requiring its own separate trade dress due to differences among several characteristic elements. *See id.* at 222-24. The *Cartier* court's holding accords with *PAJ* because the plaintiff limited the alleged trade dress to a single product line of watches specifically characterizing the entire design in minute details, including separate trade dress allegations for distinct members of a larger watch style. *See PAJ,* 262 F.3d at 117-18 (rejecting plaintiff's attempt to combine eighteen (18) separate jewelry pieces into a single product line with one trade dress); *see also Yurman Design, Inc. v. Golden Treasure Imps., Inc.,* 275 F. Supp. 2d 506, 512 (S.D.N.Y. 2003) ("*Golden Treasure*") (denying summary judgment based on *PAJ* holding that plaintiff's specific description of multiple jewelry elements that characterize each of twenty-four (24) alleged products, such as "[the] pendant design ... and earring design ... have a solitary white pearl set in yellow gold that hangs from a sterling silver bale that is sculpted to look like cable," cured deficiencies of *PAJ*).

A plaintiff must allege more characteristics of its product design than merely one element to qualify for trade dress protection. *See Golden Treasure,* 275 F. Supp. 2d at 512; *see also Cartier,* 348 F. Supp. at 222-24. Without specification of the exact product design features that compose a trade dress, "different jurors viewing the same line of products may conceive the trade dress in terms of different elements and features," so any verdict may be based on

inconsistent findings. *PAJ*, 262 F.3d at 117. Inability to explain what product design aspects merit protection indicates that a plaintiff's claim "is pitched at an improper level of generality, *i.e.*, [the plaintiff] seeks protection for an unprotectable style, theme or idea." *Id.* This specificity is necessary to inform competitors of the scope of the plaintiff's claims and for courts to shape the narrowly-tailored relief required of a trade dress claim, which the law limits to the distinctive combination of elements that are entitled to protection. *Id. See also Landscape Forms,* at 381 ("[A] trade dress plaintiff seeking to protect a series or line of products faces the particularly difficult challenge of showing that the appearance of its several products is sufficiently distinct and unique to merit protection as a recognizable trade dress"); *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F3d 27, 32-33 (2d Cir. 1995) (rejecting claim for protection of a series of greeting cards as impermissibly broad, holding "just as copyright law does not protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance").

VCA has admitted in *Landau* that the "Alhambra Trade Dress" is composed of "several lines of jewelry." Yet – despite the controlling authority of *PAJ* and guidance of *Golden Treasure* and *Cartier* – the Alhambra product design trade dress alleged in the Amended Complaint impermissibly attempts to unify at least six (6), and possibly more, product lines into one expansive and generic product design trade dress. As a matter of law, this is impermissible product design trade dress pleading. VCA must allege -- as it has done in its other suits in this Court – the specifically articulated elements of trade dress for each of its at least six (6) different Alhambra lines.

**B.    The Amended Complaint's Alleged Product Design Trade Dress Is Nothing More Than An Impermissible Common, Generic Shape.**

It is well-settled that generic product configuration is not protectable as trade dress under the Lanham Act. *PAJ* at 115; *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 638 (6th Cir. 2002). The alleged design elements **may not obtain protection** if they are functional, overbroad, describe "generic" product designs -- those that refer to a "genus" of products of which the particular product seeking protection is a species -- or describe an idea, concept, or a generalized type of appearance. *See PAJ* at 115; *see also Shevy Custom Wigs, Inc. v. Aggie Wigs*, No. 06 Cv. 1657, 2006 WL 3335008, *4-5 (E.D.N.Y. Nov. 17, 2006) (dismissing trade dress complaint holding that alleged protected elements of wig line such as "specific lace band" and "layered style" identify ideas or categories too general for protection). The danger is that "granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves," which would defeat the "strong federal policy in favor of vigorously competitive markets." *Landscape Forms*, at 379, 380; *PAJ* at 115; *Samara* at 213.

It is critical that a plaintiff may not assert trade dress protection for design elements that comprise a common or generic shape. *See Malaco Leaf, AB v. Promotion In Motion, Inc.*, 287 F. Supp. 2d 355, 364-65 (S.D.N.Y. 2003) (trade dress claim in the shape of a fish, specifically for fished-shaped Swedish Fish candy, dismissed as generic and unprotectable); *see also Big Island Candies, Inc. v. Cookie Corner*, 269 F. Supp. 2d 1236, 1247-48 (D. Haw. 2003) (trade dress claiming rectangular shaped cookies diagonally dipped in chocolate found generic and unprotectable). Failure to identify the specific elements of a product's protected trade dress -- or "specific common elements" in an entire line of products -- requires dismissal of a trade dress claim. *PAJ*, 262 F.3d at 118. *See also*, *Elements/Jill Schwartz, Inc. v. Gloriosa Co.*, No. 01 Civ. 904, 2002 WL 1492197 at *5-6 (S.D.N.Y. July 15, 2002) ("The plaintiff's inability to articulate a

trade dress for its books and frames with sufficient particularity, as well as plaintiff's failure consistently to use even its generally described trade dress means that its trade dress claims must fail"); *Maharishi Hardy Blechman Ltd., v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 545 (S.D.N.Y. Dec. 8, 2003) (holding inconsistent and overbroad trade dress not entitled to protection).

Moreover, product design trade dress must be consistently used in order to be protectable. *See Regal Jewelry Co. Inc. v. Kingsbridge Int'l., Inc.*, 999 F. Supp. 477, 486-88, 493 (S.D.N.Y. 1998) (noting the "acute" scrutiny that is required when a plaintiff tries to protect entire families of products" in holding "Plaintiff's trade dress has been insufficiently articulated and employed to receive federal protection"); *Elements/Jill Schwartz* 2002 WL 1492197 at *5-6 (alleged trade dress elements were not employed "in a particular, uniform configuration"); *Waddington North America Business Trust v. EMI Plastics, Inc.*, No. 02 cv 3781, 2002 WL 2031372, *4-5 (E.D.N.Y. Sept. 5, 2002).

It cannot be disputed that the symmetrical quatrefoil shape broadly pled in the Amended Complaint is a common, generic shape. Thus it is not protectable as product design trade dress. Accordingly, in the absence of a specific articulation of the claimed protected design elements of **each of the different Alhambra lines**, VCA's Amended Complaint must be dismissed as a matter of law.

### C.    The Amended Complaint's Impermissible Product Design Trade Dress Cannot Be Recast As "A Family of Trade Dresses."

In a new effort to save its product design trade dress allegations, the Amended Complaint alternatively characterizes its claim as a "family of trade dresses" wherein the common, generic quatrefoil shape is the common element of each of the different Alhambra lines' separate, "distinctive trade dress" (none of which are articulated in the Amended Complaint). (Am.

Compl. ¶ 22.c.) This characterization can be dispensed with quickly. A plaintiff may not take refuge in pleading a "family" of product design trade dress when the only claimed common element among the several claimed individually distinctive Alhambra trade dresses is, in fact, itself impermissible to plead protectable trade dress. *See Landscape Forms* at 380. The discussion, *supra,* applies equally to any attempt by VCA to recast its product design trade dress as a "family." It is a distinction without a difference. Because the Amended Complaint does not articulate protectable product design trade dress as a matter of law, it must be dismissed with prejudice.

## II.    THE AMENDED COMPLAINT FAILS TO ALLEGE AN UNREGISTERED TRADEMARK

The Amended Complaint now alleges in conclusory fashion that the ALHAMBRA QUATERFOIL DESIGN SYMBOL is "an unregistered design trademark" and is "inherently distinctive." (Am. Comp. ¶ 22.b.) These allegations must be stricken as the Amended Complaint fails to make a single factual allegation concerning any unregistered trademark. VCA may not allege that its product design trade dress is inherently distinctive, *Samara* at 215, and it may not escape this requirement by disingenuously claiming that the alleged product design trade dress itself is also an "unregistered design trademark."

### A.    The Amended Complaint Does Not Allege a Single Fact to Support An Unregistered Trademark Claim.

While Section 43(a) of the Lanham Act permits causes of action for both trade dress and unauthorized use of an unregistered trademark, they are two distinct concepts under the Lanham Act which require different factual allegations. Product design trade dress allegations, without more, do not suffice to allege unregistered trademark infringement. Trade dress is defined by the Second Circuit "as the total image of a good as defined by its overall composition and design, including size, shape, color, texture, and graphics." *Louis Vuitton Malletier v. Dooney & Burke,*

*Inc.*, 454 F. 3d 108, 115 (2d Cir. 2006) *citing Coach Leatherware Co. v. AnnTaylor, Inc.*, 933

F.2d 162, 168 (2d Cir. 1991).  "By way of distinction, the Lanham Act defines a trademark as

'any word, name, symbol, or device, or any combination thereof' which is intended to be used by

a person 'in commerce... to identify and distinguish his or her goods... from those manufactured

or sold by others and to indicate the source of the goods, even if that source is unknown." *Id.*[10]

(*quoting* 15 U.S.C. § 1127); *see also Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423

F.3d 539, 547 (6th Cir. 2005) ("[T]rademark and trade dress are two distinct concepts under the

Lanham Act."); *McCarthy* at §§ 8:1-8:3.

      The Lanham Act buttresses the conclusion that trademarks are source-identifying marks

on the product (as opposed to the product itself).  Section 45 of the Lanham Act defines a mark

as "use[d] in commerce" (such that liability arises under Section 43) when the mark "is placed in

any manner on the goods or their containers..."  15 U.S.C. § 1127; *see also Morse-Starrett*

*Products Co. v. Steccone*, 86 F. Supp. 796, 802 (D.C. Cal. 1946) ("It is generally held that a

---

[10] Other Circuits are in accord.  "A trademark infringement claim determines whether a 'discrete
symbol' functions as a mark and whether the mark is likely to cause confusion on the market...
[t]rade dress violations, however, trigger much broader protection by focusing on the 'total
image or overall impression' of a product, packaging, and advertising in comparison with a
defendant's accused product to determine likelihood of confusion." *McArdle v. Mattel Inc.*, 456
F. Supp. 2d 769, 781 (E.D. Tex. 2006) (*quoting McCarthy* at § 8:1); *Samara Bros.* 529 U.S. at
209 (trademark law protects word marks and symbol marks, but trade dress law protects the
design of a product).  The Seventh Circuit has distinguished between geometric shapes allegedly
used as trademarks and those allegedly used as trade dress, noting that while "geometric shapes
can be appropriated for use as trademarks without proof of secondary meaning," this analysis
applies only to "the shapes of the symbols **affixed** to the trademarked product, not the shape of
the product itself; if that shape is functional, it cannot be appropriated even with proof of
secondary meaning." *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 610 (7th Cir.
1986) (emphasis added). *See also Decorations for Generations, Inc. v. Home Depot USA, Inc.*,
128 Fed. Appx. 133, 136 (Fed. Cir. 2005) ( "As a concept, trade dress is closely related but not
identical to trademark.  Like trademark, trade dress derives its legal protection from § 43(a) of
the Lanham Act.  But unlike trademark, trade dress is intended to protect product packaging or
design that has come to be associated by consumers with a specific manufacturer or producer.")

trademark must be used on the commodity it is designed to identify, or on its container; it must be physically affixed thereto.")

"Trademark law aims to aid consumers in identifying the source of goods by allowing producers the exclusive right to particular identifying words or symbols **which they may attach to their products** as a designator of source." *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 657 (7th Cir. 1995) (emphasis added); *see also Foamation, Inc. v. Wedeward Enterprises, Inc.*, 970 F. Supp. 676, 684 (E.D. Wis. 1997) ("A trademark is a name, sign, symbol or devise **that is attached to goods** offered for sale in the market (1) to distinguish them from similar goods and, (2) to identify them with a particular source.") (distinguishing plaintiff's trade dress claim). "Allowing a particular producer to monopolize a symbol in this way is no burden on competition because the product itself can still be produced by another vendor (unless, of course, the product is patented). Because the symbol itself adds nothing to the product, consumer desire for products marketed with symbol must derive solely from the belief that products bearing the mark originated with the producer for whom the consumers had developed goodwill." *Foamation*, 970 F. Supp. at 684.

The Amended Complaint wholly fails to make any fact allegation beyond its product design trade dress claim. Accordingly, the Amended Complaint's conclusory unregistered trademark allegation must be dismissed with prejudice.

## B.   The Amended Complaint Does Not Specifically Identify the Claimed Unregistered Trademark.

VCA must specifically identify its alleged trademark. VCA has merely pointed to its trade dress allegations and conclusorily declared that its alleged trade dress is simultaneously its trademark.

"To be valid and protectable, a mark must be capable of distinguishing the products it marks from those of others." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999). VCA has not alleged even a single fact demonstrating that its alleged trademark distinguishes its products from those of its competitors and, due to VCA's inconsistent use of its alleged mark, it cannot make such a showing.

Tellingly, VCA has failed to plead that its alleged mark is, in fact, used by VCA as a mark. As was the case in *MicroStrategy*, "what appears to have eluded [plaintiff] is that even though a word, name, symbol , device, or a combination of words [a slogan] *may be used* in the sale of advertising or on or in connection with goods, it is not protectable as a trademark unless it *is used* as a mark." *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 342-43 (4th Cir. 2001) (emphasis in original; internal quotations omitted).

As set forth, *supra*, even if the Amended Complaint could be construed to allege facts sufficient to set forth an unregistered trademark allegation, VCA has wholly failed to identify what it is. VCA's website reveals that there are many different Alhambra lines and designs, and VCA's own abandoned trademark application sets forth in detail design elements that are absent from the Amended Complaint.

### C.    The Amended Complaint Does Not Allege a Single, Consistently Used Trademark.

Even if the Amended Complaint could be construed to allege facts sufficient to assert an unregistered trademark cause of action, and that the unregistered trademark has been sufficiently identified, it is evident that the Amended Complaint does not – and cannot – allege that VCA consistently used a single unregistered trademark. VCA's website confirms the opposite.

"Consistent and repetitive use of a designation as an indicator of source is the hallmark of a trademark." *Rock and Roll Hall of Fame Museum, Inc. v. Gentile*, 134 F.3d 749, 755 (6th Cir.

1998). Only marks that are consistently used qualify for trademark protection. *See, e.g., Estate of Presley v. Russen*, 513 F. Supp. 1339, 1363-64 (D. N.J. 1981) (holding that the Estate of Elvis Presley did not own a unregistered trademark in all images or likenesses of Presley, only in a single image consistently used to mark goods and services endorsed by Presley); *In re Elvis Presley Enterprises Inc.*, 50 U.S. P.Q.2d 1632, 1634 (Trademark Tr. & App. Bd. 1999) (affirming refusal to register alleged trademark in all images of Elvis Presley as overly broad to be a valid mark); *Pirone v. MacMillan*, 894 F.2d 579, 583 (2d Cir. 1990) (a mark must be "consistently used on specific goods" to qualify for trademark protection). *See also, MicroStrategy, Inc.,* 245 F.3d at 342-43 (holding plaintiff "utterly failed to provide a basis for a court to find the probability of its trademark usage" where plaintiff's use of alleged mark was not consistent). Accordingly, dismissal with prejudice of the Amended Complaint's unregistered trademark claim is compelled.

## CONCLUSION

For the foregoing reasons, Defendant Mouawad USA, Inc., respectfully requests that this Court enter an Order:

a.   Dismissing VCA's Amended Complaint in its entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure;

b.   Granting Mouawad its attorneys' and fees and costs, and

c.   For such other relief this Court deems just and proper.

Dated:  May 19, 2008

Respectfully submitted,

s/John T. Williams

JOHN T. WILLIAMS (JW-9928)
JASON NASH (*admitted pro hac vice*)
HINKHOUSE WILLIAMS WALSH LLP
180 N. STETSON
Chicago, IL 60601
(312) 268-5767
(312) 268-5801 (FAX)
jwilliams@hww-law.com

GREGORY T. CASAMENTO (GC-5273)
LOCKE LORD BISSELL & LIDDELL LLP
885 Third Avenue
New York, NY  10119
(212) 947-4700
(21) 947-1202 (fax)
gcasamento@lockelord.com

*Attorneys for Defendant
Mouawad USA, Inc.*

## CERTIFICATE OF SERVICE

I, John T. Williams, hereby certify that on this 19th day of May, 2008, a copy of the foregoing

**MEMORANDUM IN SUPPORT OF DEFENDANT MOUAWAD USA, INC.'S MOTION**

**TO DISMISS THE AMENDED COMPLAINT** was filed electronically.  Notice of this filing

will be sent to all parties by operation of the Court's electronic filing system.  Parties may access

this filing through the Court's system.

s/John T. Williams