174699.4

Milton Springut (MS6571)
David A. Kalow (DK0712)
Tal S. Benschar (TSB0838)
KALOW & SPRINGUT LLP
488 Madison Avenue
New York, New York 10022
(212) 813-1600

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

VAN CLEEF & ARPELS, S.A., and     :
VAN CLEEF & ARPELS, INC.     :     Civil Action
     :
     :
     Plaintiffs,     :     No. 07 Civ. 11476 (SAS)
     :
v.     :
     :
HEIDI KLUM GmbH and     :
MOUAWAD USA, INC.,     :     ECF CASE
     :
     Defendants.     :

-------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT MOUAWAD USA, INC.'S MOTION
TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.      The Federal Rules Incorporate A Liberal Pleading Standard . . . . . . . . . . . . . . . 2

    II.     The Articulation Requirement Has Been Met . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    III.    The Q11 Alhambra Configuration Is Both A Valid
          Trademark And Trade Dress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          A.     A Configuration Of Goods Can Function As A
                 Symbol Of Source . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          B.     Trade Dress Can Encompass Less Than The Totality
                 Of The Product Design – As Long As The Claimed
                 Trade Dress Is A Consistently Used Common Element . . . . . . . . . . . . . . 7

          C.     Alternatively The Q11 Alhambra Configuration
                 Can Be Understood As The Common Element Of
                 A Family Of Several Trade Dresses . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          D.     Alternatively, The Q11 Alhambra Configuration
                 Can Be Understood As A Design Trademark . . . . . . . . . . . . . . . . . . . . . . 11

    IV.    Defendant's Other Arguments Are Meritless . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          A.     Defendant's Arguments That The Q11 Alhambra
                 Configuration Is "Generic" And "Overbroad"
                 Are Meritless . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          B.     Defendant's Argument That VCA Has
                 Improperly Grouped Six Different "Lines"
                 Of Jewelry Into A Single Trade Dress Is
                 Meritless . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          C.     Defendants' Argument That Van Cleef's
                 Articulation Of Its Trade Dress Is Inconsistent
                 With Prior Articulations Is Meritless . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AM General Corp. v. DaimlerChrysler Corp.*,
311 F.3d 796 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Abercrombie & Fitch Co. v. America Eagle Outfitters, Inc.*,
280 F.3d 619 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
537 F.2d 4 (2d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cartier v. Four Star Jewelry Creations, Inc.*,
348 F. Supp. 2d 217 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Courtenay Committees Corp. v. Hall*,
334 F.3d 210 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dow Corning Corp. v. Applied Power Indus., Inc.*,
322 F. Supp. 943 (N.D. Ill. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Erickson v. Pardus*,
127 S. Ct. 2197 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hershey Foods Corp. v. Mars, Inc.*,
998 F. Supp. 500 (M.D. Pa. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hunt v. Enzo Biochem, Inc.*,
530 F. Supp. 2d 580 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

*Iqbal v. Hasty*,
490 F.3d 143 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Jeffrey Millstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
58 F.3d 27 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Landscape Forms, Inc. v. Columbia Cascade Company*,
113 F.3d 373 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

i

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
454 F.3d 108 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11-12

*McDonald's Corp. v. McBagel's, Inc.*,
649 F. Supp. 1268 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Moseley v. V. Secret Catalog, Inc.*,
537 U.S. 418 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Nabisco, Inc. v. PF Brands, Inc.*,
191 F.3d 208 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Qualitex Co. v. Jacobson Products Co., Inc.*,
514 U.S. 159 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Quality Inns International, Inc. v. McDonald's Corp.*,
695 F. Supp. 198 (D. Md. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rose Art Industries, Inc. v. Swanson*,
235 F.3d 165 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

*Samara Brothers, Inc. v. Wal-Mart Stores, Inc.*,
165 F.3d 120 (2d Cir. 1998),
*rev'd on other grounds*, 529 U.S. 205 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Star Indus. v. Bacardi & Co.*,
412 F.3d 373 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Wal-Mart Stores, Inc. v. Samara Brothers*,
529 U.S. 205 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Yurman Design, Inc. v. Golden Treasures Imps., Inc.*,
275 F. Supp. 506 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Yurman Design, Inc. v. Paj, Inc.*,
262 F.3d 101 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 7, 8, 15

## FEDERAL STATUTES & RULES

15 U.S.C. § 1125 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. § 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. § 1125(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

15 U.S.C. § 1127 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 5

Fed.R.Civ.P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## OTHER

McCarthy, J. Thomas,
*McCarthy On Trademarks and Unfair Competition*
("Mc Carthy") § 8:1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

McCarthy, § 8:6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Kalow, D. & Springut, M.,
*Trademark, Trade Dress Distinction Meaningful Again?,*
N.Y.L.J. 237:30 (Feb. 14, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

174699.4

Plaintiffs Van Cleef & Arpels, S.A. and Van Cleef & Arpels, Inc. (collectively "Plaintiffs" or "VCA") oppose defendant Mouawad USA, Inc.'s ("Mouawad" or "Defendant") Motion to Dismiss.[1]

## INTRODUCTION

At this early stage of the proceedings, VCA only needs to state a claim – not prove it. The Amended Complaint amply does so.   It identifies an eleven-element jewelry configuration that is clear and concrete and amply satisfies the four procedural purposes of the articulation requirement identified by the Second Circuit in *Yurman Design, Inc. v. Paj, Inc.,* 262 F.3d 101, 117 (2d Cir. 2001).  The eleven-element configuration represents the unifying, common element of a forty-year-old line of jewelry known as Alhambra – a line that has achieved fame throughout the world and significant commercial success.  Indeed, a recent *New York Times* article observed: "Alhambra clovers have silently stolen around the necks of women across the planet, becoming an iconic symbol of wealth and inclusion . . ."

All the elements of a Lanham Act claim are alleged in the Amended Complaint: the asserted configuration has achieved "secondary meaning;" it is not "functional" and Defendant's use of a similar design creates a "likelihood of confusion."  While protection of the asserted configuration can be understood as being consistent under at least three legal theories, at the core it qualifies for protection under the statutory language:  the configuration acts as a "symbol or device . . . used by a person . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others."  15 U.S.C. § 1127.   Defendant is clearly on notice of what is being claimed in the case; at this stage, no more is required.

_____

[1] Defendant Heidi Klum GmbH has joined defendant Mouawad's motion to dismiss.  (DE 26, 27)

**ARGUMENT**

**I.     The Federal Rules Incorporate A Liberal Pleading Standard**

On a motion to dismiss the standard of review is liberal:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement
> of the claim showing that the pleader is entitled to relief."  Specific facts are not
> necessary; the statement need only "'give the defendant fair notice of what the . . .
> claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly,*
> 550 U.S.   ,   , 127 S. Ct. 1955, 1964 (2007).  In addition, when ruling on a
> defendant's motion to dismiss, a judge must accept as true all of the factual
> allegations contained in the complaint.  *Bell Atlantic Corp., supra,* at   , 127 S.
> Ct. 1955 at 1964. [other citations omitted].

*Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007).

Although the decision in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) may have
made the standard of review slightly less liberal, *see Iqbal v. Hasty,* 490 F.3d 143, 155-59 (2d Cir.
2007) (noting that *Twombly* decision has created "considerably uncertainty" as to standard of
review under 12(b)(6)), courts in this circuit still only require a plaintiff to plead factual
allegations sufficient "to raise a right to relief above the speculative level."  *Hunt v. Enzo
Biochem, Inc.*, 530 F.Supp.2d 580, 591 (S.D.N.Y. 2008) (Scheindlin, J.)

> In other words, to survive a 12(b)(6) motion to dismiss, the allegations in the
> complaint must meet the standard of "plausibility." Although the complaint need
> not provide "detailed factual allegations," it must "amplify a claim with some
> factual allegations . . . to render the claim *plausible.*"

*Id.*  Further, it remains the law that when deciding a motion to dismiss under Rule 12(b)(6), the
court must "accept as true all of the factual allegations contained in the complaint" and "draw all
reasonable inferences in plaintiff's favor."  *Id.*

VCA's Amended Complaint provides ample notice to Defendant of what is claimed as its
rights and how such rights are infringed upon, and such allegations are more than sufficiently
supported to be "plausible."

2

## II.     The Articulation Requirement Has Been Met

Defendant's primary attack on the Amended Complaint (Def. Mem. at 12-13) is the supposed failure to meet a court-imposed requirement to "articulate" the elements of a trade dress as set-forth in *Yurman Design, Inc. v. Paj, Inc.,* 262 F.3d 101, 116 (2d Cir. 2001) and *Landscape Forms, Inc. v. Columbia Cascade Company*, 113 F.3d 373, 381 (2d Cir. 1997).  VCA has more than amply satisfied the articulation requirement.  The articulation requirement is not rigorous.  "The trade dress of works that are decorative or artistic may be harder to capture in words, and may need descriptions more broadly framed, or may need drawings; but the party seeking protection must nonetheless be able to point to the elements and features that distinguish its trade dress."  *Yurman*, 262 F.3d at 117.

The eleven elements set forth in Paragraph 17 of the Amended Complaint clearly articulate a concrete trade dress – one that is easily understood and applied.  Although perhaps as a shorthand, appreciating that it is a gross simplification, the jewelry configuration described by those eleven elements can be called a "quatrefoil" or "four leaf," or, somewhat more precisely, as a "symmetrical quatrefoil" (as indeed Defendant does in its brief (Def. Mem. at 13)), the most accurate way of describing that jewelry configuration is to use the eleven elements set forth in the Amended Complaint.  For clarity, we refer to that jewelry design here as the "Q11 Alhambra Configuration."

Defendant argues that the alleged trade dress "amounts only to the outline of the generic quatrefoil shape, along with a 'differing center.'"  (Def. Mem. at 2; *see also id.* at 16) The Q11 Alhambra Configuration certainly does *not* include every shape or configuration that can be characterized as a quatrefoil or four leaf.  For example, several items of jewelry which could be described as a quatrefoil or four leaf, but which do *not* incorporate all elements of the Q11

3

Alhambra Configuration, are reproduced below, with a brief (though not necessarily exhaustive) explanation of why the pictured items do not meet the Q11 Alhambra Configuration:



No inner cusps extending in about
halfway into ornament (element 8)



Lobes do not have semicircular shape
(element 2)



Lobes do not have semicircular shape
(element 2)



Not a differing center
(element 11)

Defendant's argument that the Q11 Alhambra Configuration description is vague or abstract or a mere unprotectble "idea" is fatuous.  Trade dress articulations rejected on such grounds were nowhere near as concrete as the Q11 Alhambra Configuration description.  *See, e.g., Yurman*, 262 F.3d at 117 (rejecting plaintiff's formulation of trade dress as "the artistic

combination of cable [jewelry] with other elements" because "the word 'artistic' simply begs a question."); *Landscape Forms, Inc.,* 113 F.3d at 382 (rejecting trade dress claim for "site furniture which is at once massive, yet appears to float."); *Jeffrey Millstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 33 (2d Cir. 1995) (rejecting trade dress claim which amounted to "concept [of] die-cut photographic greeting cards");  McCarthy, J. Thomas, *McCarthy On Trademarks and Unfair Competition* ("McCarthy") § 8:6 (collecting cases of the same type).

Indeed, proof that VCA's claimed trade dress has been "articulated" quite clearly and that Defendant well understands what is being claimed can be seen from a review of Defendant Mouawad's own papers.  Defendant's original motion to dismiss included a memorandum of law (DE 10) that reviewed each of the eleven elements of the Q11 Alhambra Configuration and explained their significance.  (*Id.* at 13, attached as Memorandum Exhibit 1)  Defendant well understands what is being asserted here.  It may not like that claim, considering it "overbroad" or "generic" (discussed below), but it cannot be gainsaid that VCA has made a clear articulation.

## III.    The Q11 Alhambra Configuration Is Both A Valid Trademark And Trade Dress

### A.    A Configuration Of Goods Can Function As A Symbol Of Source

The Lanham Act broadly defines a trademark as including "any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others."  15 U.S.C. § 1127.  Similarly, Section 43(a), 15 U.S.C. § 1125, proscribes the use in commerce of "any word, term, name, symbol, or device, or any combination thereof" which is likely to cause marketplace confusion or deception.

This language is exceptionally broad.  In holding that even a single color can be registered as a trademark, the Supreme Court observed:

Both the language of the [Lanham] Act and the basic underlying principles of trademark law would seem to include color within the universe of things that can qualify as a trademark. The language of the Lanham Act describes that universe in the broadest of terms.   It says that trademarks "includ[e] any word, name, symbol, or device, or any combination thereof." § 1127. *Since human beings might use as a "symbol" or "device" almost anything at all that is capable of carrying meaning, this language, read literally, is not restrictive.* The courts and the Patent and Trademark Office have authorized for use as a mark a particular shape (of a Coca-Cola bottle), a particular sound (of NBC's three chimes), and even a particular scent (of plumeria blossoms on sewing thread). [citations omitted] If a shape, a sound, and a fragrance can act as symbols why, one might ask, can a color not do the same?

*Qualitex Co. v. Jacobson Prods. Co., Inc.,* 514 U.S. 159, 162 (1995) (emphasis added).

Even far simpler configurations can function as a protectible "trademark" – *i.e.,* a symbol of source – under the Lanham Act. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 116 (2d Cir. 2006) ("Basic geometric shapes[2] . . . may be protected . . . upon a showing of secondary meaning."); *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208 (2d Cir. 1999) (fish shape for crackers), *abrogated on other grounds, Moseley v. V. Secret Catalog, Inc.,* 537 U.S. 418 (2003).

The Amended Complaint expressly identifies the Q11 Alhambra Configuration as a "symbol of source."  (Am. Compl. ¶¶ 18, 21)  This is the most basic level protected by the Lanham Act.  Although this "symbol of source" can be understood either as (1) a trade dress; (2) the common denominator of a family of trade dress or (3) a design trademark  (Am. Compl. ¶ 22) – which different theories may have minor legal differences – at the core it is clear that the Q11 Alhambra Configuration shape can function as a symbol of source – which is what is

---

[2] In context, this references basic shapes such as a square, circle or oval.   The *Vuitton* decision cited *Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 383 (2d Cir. 2005), which in turn quoted *Dow Corning Corp. v. Applied Power Indus., Inc.,* 322 F. Supp. 943, 945 (N.D. Ill. 1970*)* as follows: "Basic [geometric] shapes such as circles, squares, ovals and rectangles, when used as vehicles for the display of a word mark, do not indicate the origin of the goods and hence cannot be appropriated exclusively, absent a showing of secondary meaning." (brackets in original).

protected by the Lanham Act.

**B.    Trade Dress Can Encompass Less Than The Totality Of The Product Design – As Long As The Claimed Trade Dress Is A Consistently Used Common Element**

Defendant argues that VCA's claimed trade dress is invalid because the various members of the Alhambra family bear different "distinctly different" designs.  (Def. Mem  at 16)  Although some of the design features differ across the various Alhambra families, there are also common design elements, including the Q11 Alhambra Configuration – which is the "the dominant, common feature."  (Am. Compl. ¶17)

VCA is not required to claim here the totality of each design as its trade dress.  "While trade dress is most often defined as a totality of elements, there is no reason why the plaintiff cannot define a list of elements consisting of less than the totality of features appearing on a package or container."  McCarthy § 8:1.  *Accord, AM General Corp. v. DaimlerChrysler Corp*., 311 F.3d 796 (7th Cir. 2002) (applying same to product-design trade dress for a front grille for cars and jeeps); *Hershey Foods Corp. v. Mars, Inc*., 998 F. Supp. 500, 517-518 (M.D. Pa. 1998) ("[T]he plaintiff has detached itself from its complete trade dress. It is claiming a protectable mark in an abbreviated trade dress . . . [W]e have already decided that a trademark holder can seek to protect a combination of elements making up less than the complete trade dress if, for whatever reason, the holder believes that combination has acquired secondary meaning.")

Indeed, the Second Circuit strongly suggested this very point in *Yurman*.  Plaintiff there sought to protect a trade dress for

> an entire product line of 18 different Yurman pieces – eight rings, seven
> bracelets, and three pairs of earrings.   The overall impression conveyed by the
> Yurman designs that are alleged to embody Yurman's trade dress is a structural,
> almost industrial motif of twisted multi-strand cable, executed with a polished
> and elegant finish, and set off by gemstones.

*Yurman*, 262 F.3d at 114.  In rejecting Yurman's articulation of trade dress, the Second Circuit observed:

> Pressed by PAJ on appeal to provide some description of its trade dress, Yurman produced the following:  "the artistic combination of cable [jewelry] with other elements."  Appellee's Brief 33.  But the word "artistic" simply begs a question; ***and unless Yurman seeks protection for cable itself***, the jewelry must be supposed to combine cable "with other elements."

*Yurman*, 262 F.3d at 117-18 (emphasis added).

The Second Circuit thus strongly indicated that Yurman might have claimed the cable design itself as its trade dress[3] – even though that was clearly only a portion of each jewelry piece – but, of course would then have to be prepared to prove secondary meaning and non-functionality for that trade dress.

Defendant alternatively seeks to resolve the issue factually when it invites the Court to take judicial notice of the appearance of the various families within the Alhambra line, and claims that these have inconsistent looks precluding a common trade dress.  (Def. Mem. at 7)  VCA disagrees.  While there is no question that there are variations within the Alhambra line, this does not obviate VCA's trade dress rights.  "We expect that in a product line there will be inevitable variation in the products."  *Samara Bros., Inc. v. Wal-Mart Stores, Inc.,* 165 F.3d 120, 129 (2d Cir. 1998), *rev'd on other grounds,* 529 U.S. 205 (2000).  What is important is that "[a]ll of the various pieces in the Alhambra collection incorporates the dominant, common feature" *i.e.,* the Q11 Alhambra Configuration.   (Am. Compl. ¶17)

---

[3] The same dictum belies Defendant's assertion that a trade dress must be composed of more than one element.  (Def. Mem. at 17)   Neither case cited by Defendant for that proposition anywhere indicates that a trade dress cannot be composed of a "single element."  *See Yurman Design, Inc. v. Golden Treasures Imps., Inc.*, 275 F.Supp. 506, 512 (S.D.N.Y. 2003); *Cartier v. Four Star Jewelry Creations, Inc.*, 348 F.Supp.2d 217, 222-24 (S.D.N.Y. 2004).   Moreover, as discussed above, the Q11 Quatrefoil Configuration is much more than a "single element."

This can be seen plainly from the front page of the Amended Complaint (where VCA illustrates four members of the Alhambra line) and VCA's website, where even more such members are shown.  For the Court's convenience, we reproduce here one each of the six Alhambra families reference in the Amended Complaint ¶ 16:



Vintage Alhambra          Alhambra 2000          Modern Alhambra          Byzantine Alhambra






Magic Alhambra                                    Lucky Alhambra

Drawing all reasonable inference in VCA's favor, as is required on a motion such as this one, it is certainly at least "plausible" that VCA can establish trade dress rights in this configuration as the common element of the entire Alhambra line.  At this stage of the proceedings, no more is required.

### C.    Alternatively The Q11 Alhambra Configuration Can Be Understood As The Common Element Of A Family Of Several Trade Dresses

A trademark or trade dress "family" generally means "a group of marks each individual element of which uses a common element that consumers associate with the mark's owner." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). The most famous example is the McDonald's family of marks – the fast food restaurant McDonald's, apart from its primary trademark McDonald's, also has used a variety of names such as 'McMuffin,' 'McNuggets,' 'McCheese' and 'McPizza.' In *McDonald's Corp. v. McBagel's, Inc.,* 649 F. Supp. 1268 (S.D.N.Y. 1986), the court affirmed McDonald's position that it had a family of marks characterized by "Mc_____" with the blank a generic food term. *Id.* at 1272. The Court went on to enjoin the defendants' use of "McBagel's" for a bagel bakery and restaurant. *See id. See also Quality Inns Int'l, Inc. v. McDonald's Corp.*, 695 F. Supp. 198, 221-22 (D. Md. 1988) (finding actionable confusion between "McSleep Inn" and McDonald's' family of trademarks).

Crucially, the "family of marks" doctrine extends trademark protection even to marks not actually used by the mark owner but which do contain the "common element." Thus, for example, in *McDonald's* the plaintiff had never actually sold bagels nor used the exact term "McBagel's." It had used numerous trademarks including "Mc_____" as the common element, and that was sufficient basis to enjoin "McBagels."

Even if, as Defendant seems to insist, each family member in the Alhambra line (*e.g.*, Vintage Alhambra, Byzantine Alhambra) is viewed as having a separate "trade dress," there is no reason that VCA cannot claim the Q11 Alhambra Configuration as the "common element" in a trade dress family and then seek to prove that such common element is recognized by the public as being associated with VCA and is non-functional.

Defendant's argument that VCA has failed to articulate the trade dress in each of its six Alhambra lines (Def. Mem. at 13) is meritless.  If, as Defendant suggests, the Alhambra line is broken down into six separate trade dresses, there is no need to articulate six separate trade dresses because VCA does not claim infringement of such rights.  What *is* being claimed is infringement of the "common element" of the trade dress family – and that common element has been clearly articulated, as per the above.

### D.    Alternatively, The Q11 Alhambra Configuration Can Be Understood As A Design Trademark

"[T]he history of American law throughout much of the Twentieth Century is the gradual disappearance of distinctions between the law of 'trade dress' and that of 'trademarks.'" McCarthy § 8:1.  The main legal distinctions are that trade dress, if unregistered, must be proven to be non-functional, 15 U.S.C. § 1125(a)(3), and, at least for product design, cannot be inherently distinctive but rather must be proven to have achieved secondary meaning.  *Wal-Mart Stores, Inc. v. Samara Brothers,* 529 U.S. 205, 212-16 (2000).

In *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108  (2d Cir. 2006) the court considered a claim for an unregistered mark – a combination of letters, shapes and bright colors on a black or white background.  *See id.* at 112, 115.  The claimed colored design covered most of the body of the product (ladies' handbags) but did not include, for example, the shape of the handbag itself.  The Second Circuit held that the mark claimed was a trademark, not trade dress, which was both inherently distinctive *and* had acquired secondary meaning:

> Vuitton does not seek to protect the overall look of its handbags, that is, its trade dress, but rather the narrower trademark it has established in its colored pattern. We have defined trade dress as "the total image of a good as defined by its overall composition and design, including size, shape, color, texture, and graphics." By way of distinction the Lanham Act defines a trademark as "any

word, name, symbol, or device, or any combination thereof" which is used or intended to be used by a person "in commerce . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." [citations omitted] Although trade dress and trademarks are both protected by § 43 of the Lanham Act, *15 U.S.C. § 1125(a)*, the fact that Vuitton seeks only protection of a trademark and not trade dress informs our understanding of the precision of its mark.

* * *

To . . . establish protectability under § 43(a), "a mark must be sufficiently 'distinctive' to distinguish the registrant's goods from those of others." [citation omitted]  A plaintiff can establish a mark as distinctive by showing that the mark is "inherently distinctive," *i.e.*, intrinsically capable of identifying its source, or by demonstrating that the mark has acquired "secondary meaning." [citation omitted]

* * *

Vuitton's Multicolore mark, consisting of styled shapes and letters – the traditional Toile mark combined with the 33 Murakami colors – is original in the handbag market and inherently distinctive . . . We agree with the district court that the Multicolore mark is protectable both because it is inherently distinctive and because it has acquired secondary meaning.

*Id.* at 115-16.

    *Vuitton* differentiates trade dress, the "total image of a good" from trademark, which may include, *inter alia*, product features that are less than the total image.  The multicolored design on the Vuitton bags was a major part (if not the predominant part) of the product's design, yet the Second Circuit held that it was a "trademark" which could be inherently distinctive.[4]

    The Q11 Alhambra Configuration is a part, but not the whole, of the product design; under *Vuitton* it qualifies as a "trademark" which can be inherently distinctive.  Defendants' argument (Def. Mem. at 21-23) that a trademark cannot be part of a product design but must be "affixed" to the product is simply contrary to Second Circuit law.

---

[4] As a matter of full disclosure, the undersigned counsel have previously written an article on this very issue, wherein the Second Circuit's holding was contrasted with other authorities and criticized as in tension with the Supreme Court's holding in *Wal-Mart Stores, Inc. v. Samara Brothers,* 529 U.S. 205, 212-16 (2000).  *See* N.Y.L.J. 237:30 *Trademark, Trade Dress Distinction Meaningful Again* (Feb. 14, 2007), courtesy copy attached as Memorandum Exh. 2.

Defendant's other arguments are also meritless. The claimed trademark is clearly
identified as the "ALHAMBRA QUATREFOIL DESIGN SYMBOL" (Am. Compl. ¶ 22), which
is in turn defined to be the Q11 Alhambra Configuration. (*Id.* ¶¶ 17, 18) As for the supposed
lack of trademark usage, the Amended Complaint is replete with allegations that VCA has
marketed and promoted its Alhambra jewelry and created new designs incorporating the same
distinctive, recognized look. (*Id.* ¶¶ 16-22)

## IV.    Defendant's Other Arguments Are Meritless

### A.    Defendant's Arguments That The Q11 Alhambra Configuration Is "Generic" And "Overbroad" Are Meritless

Defendants also argue that the quatrefoil shape is "generic." This is contrary to the
Amended Complaint's allegation that the consuming public associates the mark with VCA.
(Am. Compl. ¶¶ 1, 18, 19) In any case, the issue of genericness is a factual issue, not lending
itself to be decided on the pleadings. *See Courtenay Comms. Corp. v. Hall*, 334 F.3d 210, 215
(2d Cir. 2003) (reversing dismissal of trademark complaint on genericness grounds because issue
is factual.)

> [I]t is usually true that "the classification of a mark is a factual question,"
> [citation omitted] and that question turns on "how the purchasing public views
> the mark." [citation omitted] The pleadings and documents necessarily relied
> upon by plaintiff's complaint, which were all that the district court could
> rightfully consider in deciding the motion to dismiss for failure to state a claim
> [citation omitted] are insufficient for determining the critical fact of how the
> public views the [trade]mark [at issue].

*Id.*

Moreover, the Q11 Alhambra Configuration simply does not fit into the definition of
"generic" used in trademark cases. First, we note that classification of marks is made *relative to
the goods at issue;* "a term that is in one category for a particular product may be in quite a

different one for another." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976) (Friendly, J.).  Thus, to use a classic example, APPLE is arbitrary (and hence, highly distinctive) for computers but generic for apples.

A generic mark "is one that refers, or comes to be understood as referring, to the genus of which the particular product is a species."  *Id.* Applying that classic formulation to product designs, the Sixth Circuit has held:

> In language repeatedly quoted by the Supreme Court, Judge Friendly described generic terms as the genus of which a product is a species, *e.g.,* "soap" or "shirts" or "baseball caps."  The equivalent in designs, bearing in mind the word-mark policy that a manufacturer has the right to call a product by its name, would be the most basic incarnation of a given genus of products, *i.e.,* the image that appears in a person's head when he hears the word "shirt" or "baseball cap." Clothing bearing images of athletic paraphernalia are not a basic incarnation of certain types of apparel.

*Abercrombie & Fitch Co. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 639 (6th Cir. 2003).

Under that standard, the Q11 Alhambra Configuration is obviously not generic for jewelry items.  When the average person thinks of "jewelry" – or other generic terms for types of jewelry such as "bracelet," "necklace" or "earring" – does the quatrefoil shape come to mind? That proposition is, at best, highly dubious, and certainly not one the court can resolve against VCA at this juncture.  *See, generally, Hunt v. Enzo Biochem, Inc.*, 530 F.Supp.2d at 591 (When deciding a motion to dismiss under Rule 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in plaintiff's favor.")(citations omitted)

For similar reasons, the contention that the Q11 Alhambra Configuration is "overbroad" is one that cannot be judge on the pleadings.  It can only be judged when weighing the Q11 Alhambra Configuration articulation against VCA's proofs of market recognition and confusion

created by Defendant's sales of similarly designed products.  As the Second Circuit observed in

*Yurman* when explaining the reasons for imposing the articulation requirement:

> no juror can evaluate secondary meaning, over breadth, or nonfunctionality
> without knowing precisely what the plaintiff is trying to protect: "without such a
> precise expression of the character and scope of the claimed trade dress, . . .
> courts will be unable to evaluate how unique and unexpected the design elements
> are in the relevant market."

*Yurman*, 262 F.3d at 117 (citation omitted).

### B.    Defendant's Argument That VCA Has Improperly Grouped Six Different "Lines" Of Jewelry Into A Single Trade Dress Is Meritless

Defendant tries to make much of the fact that the trade dress asserted in the Alhambra

line covers six varying family members of the jewelry line.  (Am. Compl. ¶ 16)  Defendant's

claim that there is something impermissible about "unifying" jewelry variations of six family

members that incorporate the same distinctive look (Def. Mem. at 16) and its reliance on the

Second Circuit's *Yurman* decision are legally specious.

As discussed above, a close examination of the *Yurman* opinion reveals that the Second

Circuit did *not* reject the plaintiff's trade dress claim because it unified multiple styles of jewelry

– indeed the Second Circuit indicated in dictum that had the plaintiff articulated a clear, non-

abstract trade dress description, it would have allowed the claim.  *See Yurman*, 262 F.3d at 117-

18.  VCA, unlike the plaintiff in *Yurman,* has articulated a clear trade dress that unifies the entire

Alhambra line.

In any event, the law is clear that a trade dress plaintiff has broad discretion to define its

trade dress as it sees fit:

> [T]he plaintiff in a trade dress action under section 43(a) of the Lanham Act is
> free to seek trade dress protection for whatever products or packaging it sees fit.
> A plaintiff can seek trade dress protection either for a single product or for a
> whole line of products. [citations omitted] ***Moreover, in seeking protection for***

> *the trade dress of a line of products, the plaintiff can define the line as it sees fit. In addition, there is nothing to constrain a plaintiff from seeking protection for several different lines of products (or of the packaging of those products). In presenting a case for trade dress infringement, a plaintiff can group together any number of products in any way it sees fit, as long as the products have a consistent overall look.*

*Rose Art Industries, Inc. v. Swanson*, 235 F.3d 165, 173 (3d Cir. 2000) (emphasis added).

Whether the various styles of jewelry marketed by VCA under the designation "Alhambra" are considered a single "line" of products or six "lines" is of no legal moment to VCA's trade dress claim – what is important is that all of the members of the Alhambra line have a consistent overall look, or, to use the language of the Amended Complaint, "[a]ll of the various pieces in the Alhambra collection have one dominant, common feature," *i.e.,* the Q11 Alhambra Configuration. (Am. Compl. ¶ 17)

**C.    Defendants' Argument That Van Cleef's Articulation Of Its Trade Dress Is Inconsistent With Prior Articulations Is Meritless**

Defendant cites to VCA's articulation of its trade dress in prior litigations and in an application to register a trademark in the U.S. Patent and Trademark Office and argues that such articulations are "inconsistent" and "contradictory" with that alleged here. The simple answer to that argument is that all of those cases involved only a subset of the Alhambra line – specifically the Vintage Alhambra. VCA's assertion of trade dress rights in a narrower subset of the line does not preclude its assertion of a broader trade dress here.

The Vintage Alhambra was the first member of the Alhambra line, first introduced in 1968, whereas the other variations were introduced at a later time. (Am. Compl. ¶ 16) In addition to the Q11 Alhambra Configuration, the Vintage Alhambra trade dress design also incorporates several other features, including a beaded border, in-laid translucent material, and

16

larger beads at the corners. Given its long history, it is not surprising that the Vintage Alhambra design enjoys its own commercial recognition apart from the Q11 Alhambra Configuration.

There is nothing "inconsistent" or "contradictory" with VCA asserting trade dress rights in the Vintage Alhambra design and the trade dress asserted herein. There is no reason that VCA cannot enjoy trade dress rights in the Q11 Alhambra Configuration alone – the common element of the entire Alhambra line – even as it also enjoys trade dress rights in the narrower subset of Vintage Alhambra, with its own, more detailed design.

The point is best illustrated when considering the "family of marks" doctrine and the McDonald's example cited above. The mere fact that McDonald's successfully claimed ownership of a family of trade dress characterized by the "Mc_____" prefix did not mean it loses its narrower rights to "McDonald's" as a trademark for hamburger restaurants. If someone opened a hamburger restaurant and named it "McDonald's," one would expect McDonald's to assert its longstanding and famous trademark "McDonald's." The family of marks argument successfully advanced by the company in other cases would be superfluous in such a hypothetical case, but would hardly be "inconsistent" with assertion of the McDonald's mark.

VCA's prior litigations involved defendants who had closely copied its oldest Alhambra design, the Vintage Alhambra. In such cases – analogous to the McDonald's-hamburger-restaurant hypothetical – VCA asserted its trade dress rights in that design. This case, in contrast is more analogous to a bagel store calling itself McBagel's. In each case, VCA has simply asserted the rights infringed by the Defendants, rights that are distinct, albeit related.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied.


Respectfully submitted,

KALOW & SPRINGUT LLP


Dated: June 8, 2008                    By: _____/S_____
                                                Milton Springut, Esq.
                                                David A. Kalow, Esq.
                                                Tal S. Benschar, Esq.


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the execution date stated below a copy of the

foregoing document was filed and served through the ECF system, and that notice of such filing

will be sent to all counsel of record by operation of the Court's ECF system.  Parties may access

this filing through the ECF system.


Executed on June 8, 2008
New York, New York

                                        By:_____/S_____
                                                Tal S. Benschar


18

GREGORY T. CASAMENTO (GC-5273)
LOCKE LORD BISSELL & LIDDELL LLP
885 Third Avenue
New York, NY  10119
(212) 947-4700
(212) 947-1202 (fax)

JOHN T. WILLIAMS (JW-9928)
LOCKE LORD BISSELL & LIDDELL LLP
111 S. Wacker Drive
Chicago, IL 60606
(312) 443-0371
(312) 896-6371 (fax)

*Attorneys for Defendant*
*Mouawad USA, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

VAN CLEEF & ARPELS, S.A.,                         07-CV-11476 (SAS)
VAN CLEEF & ARPELS, INC., and
VAN CLEEF & ARPELS DISTRIBUTION, INC.    **MEMORANDUM IN SUPPORT OF**
                                                                          **DEFENDANT MOUAWAD USA,**
                                                                          **INC.'S MOTION TO DISMISS THE**
                              Plaintiffs,                             **COMPLAINT**

                                                                          **DISPOSITIVE MOTION**
        vs.

HEIDI KLUM GmbH and
MOUAWAD USA, INC.

                              Defendants.

------------------------------------------------------------- x

quatrefoil's dictionary definition with specific inclusion of necessary geometric aspects, such as its inner and outer boundaries.  The Complaint describes the "Alhambra Trade Dress" as:

A quatrefoil shaped ornament (**the definition of a quatrefoil**);

    (1)    composed of four identical lobes (**necessary components of a quatrefoil**);

    (2)    having semicircular natures (**necessary aspects of a lobe, *i.e.*, rounded projection**);

    (3)    arranged with top-bottom and left-right symmetry (**the necessary geometric result of a shape having identical lobes around a common center**);

    (4)    the outer band (**the shape's outer boundary**);

    (5)    having a constant width (**a necessary component of identical lobes**);

    (6)    whose outer surface defines the contour of the ornament (**the necessary result of drawing a geometric boundary line**);

    (7)    whose inner surface defines the inner portion (**the necessary result having a boundary that defines a geometric shape**);

    (8)    having four identical cusps (**inner points of the lobes**) which extend about half way into the ornament  (**necessary components of a quatrefoil which result from geometric aspects of the lobes and their placement around a common center**);

    (9)    the inner portion (**the shape's inner boundary**);

    (10)    having a quatrefoil shape defined by the inner surface of the outer band (**the necessary result of the drawing a boundary that defines a shape**); and

    (11)    which is either hollowed out or made of a single filling material, such as mother of pearl, onyx, lapis, diamonds or metal, and may include a small centered jewel (**a simple and inconsistent list of materials, or lack thereof, that may or may not be placed inside the ornament**).

(Compl. ¶ 28) (parentheticals and emphasis added).

As a matter of law, VCA must allege that its separate product design(s) each encompass more than the idea of a symmetrical quatrefoil and describe more than a generic shape to obtain trade dress protection.  The Complaint's trade dress allegations plainly fail.

# New York Law Journal

*Web address: http://www.nylj.com*

VOLUME 237—NO. 30     WEDNESDAY FEBRUARY 14, 2007     **ALM**

## OUTSIDE COUNSEL

BY DAVID KALOW AND MILTON SPRINGUT

# *Trade Dress, Trademark Distinction Meaningful Again?*

Trademark law recognizes that many things can function as a "symbol of source" and may be protected as a trademark: a word, a design, a package, a product feature.

In recent years, Congress and the Supreme Court have made it more difficult to protect a subset of these symbols—called "trade dress"—by enacting additional legal hurdles that are not required for "trademarks" in general.

Not surprisingly, some litigants have tried to get around these new hurdles by claiming that what they are trying to protect is merely a "trademark" and not "trade dress."

We examine here how the Patent and Trademark Office and the courts have dealt with the issue of drawing the line between the two—a line which can mean the difference between having to face difficult legal obstacles or not.

## Historical Background

Traditionally, trademarks and trade dress were considered different rights with different rules. Trademarks were discrete symbols of source; trade dress referenced the overall look of a product's packaging, later extended to the overall look of product design. Gradually, the distinction between the two began to fade and became of less importance.

The Supreme Court's reading of the Lanham Act confirms that, under the Lanham Act, "trade dress" is merely one type of "trademark." In *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 US 205, 209-10 (2000), the Court noted that a trademark is



*David Kalow      Milton Springut*

defined very broadly to include "any word, name, symbol or device, or any combination thereof [used or intended to be used by a person] to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to

---

*For "product design" trade dress, the 'Wal-Mart' Court required a showing that the design has acquired a "secondary meaning" in the marketplace, i.e., the public associates it with a single source.*

---

indicate the source of the goods, even if that source is unknown." 15 USC §1127. This very broad definition lead courts to assume that the Lanham Act protects trade dress—both under §2, 15 USC §1052 if registered and, even if not registered, under §43(a), 15 USC §1125(a).

## Legal Distinctions Are Being Revived

• *Two Hurdles: Secondary Meaning and Functionality.* In 1999, Congress

amended §43(a) specifically with respect to trade dress actions, providing that in a case involving unregistered trade dress "the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 USC §1125(a)(3).

In *Wal-Mart*, the Supreme Court created another legal hurdle: for some types of trade dress, called "product design" trade dress, the Court required a showing that the design has acquired distinctiveness or "secondary meaning" in the marketplace, i.e., the relevant public associates the design with a single source. *Wal-Mart*, 529 US at 216. In contrast, trademarks (as well as "packaging" trade dress) can still be shown to be "inherently" distinctive, i.e., so distinctive by their very design relative to the goods or services at issue that they are always distinctive and protectable even before they have been promoted and achieved consumer recognition.

Thus, a plaintiff asserting unregistered[1] "trade dress" faces two additional legal hurdles that a "trademark" plaintiff may not.

• *Policy Reasons.* These additional legal hurdles serve several important policy functions.

First, in *Wal-Mart* the Supreme Court explained that there is a difference as to the natural consumer perception on word marks and product packaging on the one hand and product design on the other. As to the former, the Court said that "[c]onsumers are…predisposed to regard those symbols as indication of the producer, which is why such symbols 'almost automatically tell a customer that they refer to a brand,' and 'immediately…signal a brand or a product source.'" As to the latter, however, "consumer predisposition to equate the feature with the source does not exist. Consumers are aware of the reality that, almost invariably, even the most unusual of product designs—such

---

**David Kalow** *and* **Milton Springut** *are partners at Kalow & Springut.* **Tal Benschar** *is an associate at the firm and assisted in the preparation of this article.*

as a cocktail shaker shaped like a penguin—is intended not to identify the source, but to render the product itself more useful or more appealing." *Wal-Mart*, 529 US at 212-13 (citations omitted).

Second, these legal hurdles ensure that there is a free competition in the marketplace unhindered by easy threats of trade dress suits. See *Wal-Mart*, 529 US at 213.

Third and related to the second, courts are concerned that extending trade dress rights to product design may turn into a back door to obtaining patent-like (or copyright-like) protection, when the owner of the design has not shown any entitlement to a patent or copyright.

### Distinguishing Trademarks, Trade Dress

It will usually be easy to determine into which category to fit the claimed rights. A word mark used on a label affixed to the goods will obviously be considered a "trademark." Conversely, a design of a complete product marketed as such to the public is clearly trade dress and requires the showings of secondary meaning and non-functionality. But there can be borderline cases where the determination is not at all obvious.

• **TTAB Approach—Consumer Perception.** *In re Slokevage*, No. 75602873 (TTAB Nov. 10, 2004), dealt with a producer of clothing which bore the claimed mark of a combination of words and design. The application describes that proposed mark as "[a] configuration located on the rear hips comprised of: A label in the center with the words "FLASH DARE!" on a V-shaped background; and on each of the two sides of it there is a clothing feature (a cut-out area, or 'hole', and flap affixed to seat area with a closure device); the top borders of the 'holes' also forming and continuing the "vee" shape." The claimed mark appeared as in Figure 1.

**Figure 1**



The Trademark Trial & Appeal Board (TTAB) rejected the application under *Wal-Mart* for failure to show secondary meaning. It held, among other things, that the "holes

and flaps portion" of the proposed mark constituted "product design" under *Wal-Mart* because consumers would not ordinarily view that as an indication of source.

*Slokevage* is significant because the claimed mark was only small portion of the overall design of the product, yet was held to be "product design trade dress" under *Wal-Mart*. What was determinative was not how much of the product design the mark covered but rather consumer perception of the feature as something not generally used to signify source.

Further support for this view can be found in *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 US 23 (2001), which held that a patented design for outdoor sign stands was a "functional" trade dress and hence unprotectible. The patented feature was the use of dual-springs at the bottom of the sign stand, which keep the road signs standing up despite adverse weather conditions.

The Supreme Court held that the prior utility patents were insurmountable evidence that this design had a utilitarian advantage, and hence was not protectible as "trade dress." See id. at 29-35. The claimed trade dress, dual springs, was likewise only a small part of the design, as can be seen in Figures 2 and 3.



**Figure 2**

Yet the Supreme Court had no trouble in labeling the claimed feature as a "trade dress," requiring a showing of nonfunctionality.

• *Courts of Appeals Take a "Definitional"* **Approach.** In recent opinions, two U.S. Courts of Appeals have taken a different approach.

**1. Second Circuit.** In *Louis Vuitton Malletier v. Dooney & Burke, Inc.*, 454 F3d 108 (2d Cir. 2006), the Second Circuit considered a claim of trademark rights in a handbag design (shown in Figure 4). Famous handbag manufacturer Louis Vuitton, claimed a composite trademark, explained

thus by the Second Circuit:

Vuitton, a French design firm, began selling trunks and accessories in the United States in 1893. In 1896 it created the Toile Monogram, featuring entwined LV initials with three motifs: a curved diamond with a four-point star inset, its negative, and a circle with a four-leafed flower inset. Vuitton registered trademarks in this design pattern as well as the individual unique shapes with the United States Patent and Trademark Office…



**Figure 3**

In October 2002 plaintiff launched a series of handbags featuring "new signature designs" created by Marc Jacobs and Japanese artist Takashi Murakami. The new bags (Murakami handbags) incorporated an update on the fashion house's famous Toile marks. The fresh design-coined the Louis Vuitton Monogram Multicolore pattern (Multicolore mark)-was a modified version of the Toile marks, printed in 33 bright colors (Murakami colors) on a white or black background. Id. at 112.

Vuitton's "mark" thus consisted in a combination of shapes and letters with particular colors on a particular background—a composite color pattern or design. The Second Circuit further held that the claimed mark could be "inherently distinctive:"

Vuitton does not seek to protect the overall look of its handbags, that is,

its trade dress, but rather the narrower trademark it has established in its colored pattern. We have defined trade dress as "the total image of a good as defined by its overall composition and design, including size, shape, color, texture, and graphics." *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F2d 162, 168 (2d Cir.1991). By way of distinction the Lanham Act defines a trademark as "any word, name, symbol, or device, or any combination thereof" which is used or intended to be used by a person "in commerce…to identify and distinguish his or her goods …from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 USC §1127 [other citations omitted] Although trade dress and trademarks are both protected by §43 of the Lanham Act, 15 USC §1125(a), the fact that Vuitton seeks only protection of a trademark and not trade dress informs our understanding of the precision of its mark. Id. at 115-16.

The Second Circuit went on to hold that the mark was protectible both because it was "inherently distinctive" and because it was a strong mark which had acquired secondary meaning.

The Second Circuit's definitional treatment of when a claimed mark is a "trademark" or "trade dress" is problematic. The very definition of a trademark it cited from the Lanham Act was cited by the Supreme Court in *Wal-Mart* as the statutory basis for protecting trade dress. If, as the Second Circuit would have it, "trade dress" actually has a definition distinct from the statutory definition of "trademark," then what is the justification for protecting trade dress as a kind of "trademark" under the statute?

Second, while it is true that "trade dress" has been defined as the "total image" of the good, does that really mean that anything less than the totality of a design is not trade dress but merely a trademark? Vuitton developed, through the help of an artist and a designer, what it believed was a pleasing and eye-catching color pattern to be used on its handbags. As shown Figure 4, the pattern covered most of the area of the handbag. True, there were other design elements - for example, the Murakami bags were made in a variety of shapes and sizes, not claimed as part of the mark. A simple reading of *Wal-Mart* would indicate

that what Vuitton sought to protect was indeed "product design"—to be sure, not the whole of the design, but a prominent part thereof.

Third, the Second Circuit's approach avoids the "consumer disposition" reasoning quoted from the Supreme Court's *Wal-Mart* decision above. The *Wal-Mart* rationale is difficult to square with the notion that a product design, merely because it is only a portion of the total design, does not require a showing of secondary meaning. Query whether the combination mark of designs and color scheme is perceived by consumers to be indicative of source.

Similarly, to the extent part of the reason for requiring secondary meaning is a concern for the preservation of free competition in aesthetic features, one might query whether public policy supports granting one manufacturer a monopoly on a color scheme.

**2. Sixth Circuit.** A similar approach similar was taken by the Sixth Circuit in *Gibson Guitar Corp. v. Paul Reed Smith Guitars, L.P.*, 423 F3d 539 (6th Cir. 2005). There the plaintiff had a registration for the design of a guitar. The parties disputed what, precisely, the registration covered. The defendant asserted that the registration covered only the two-dimensional outside shape or silhouette of the guitar shape, as shown in the registration drawing. The plaintiff claimed that the mark included the overall three-dimensional shape plus other product features shown in a photograph accompanying the

**Figure 4**



registration application.

In its opinion resolving this question, the Sixth Circuit distinguished trademark from trade dress rights, citing the same definitional difference as the Second

Circuit did in *Vuitton*. 423 F3d at 546-47. Using this distinction, it concluded that the mark protected by the registration was therefore only the two-dimensional drawing of the overall shape and did not include the guitar's other features; based on that limitation, it concluded that there was no likelihood of confusion. Id. at 548-52.

The Sixth Circuit's attempt to distinguish trademark and trade dress rights appears misplaced. Whether something is labeled "trade dress" or a "trademark," it is still registrable in the Trademark Office. The issue, therefore, was the scope of the plaintiff's registration, not whether it was a registration for "trade dress" or "trademark." That issue should have been resolved by looking to the registration and application papers.

## Conclusion

Although trade dress, conceptually and legally, is a subset of trademark law, both Congress and the Supreme Court have created legal hurdles for that subset which are not in place for all trademarks. As litigants in marginal cases seek to avoid these hurdles, we believe that the defining line between the two will be an issue that will continue to exercise the federal courts.

•••••••••••••• ● ● ●••••••••••••

1. Once registered, a trade dress enjoys a presumption of validity. 15 USC §1057(b). The owner of a registered trade dress would not have to shoulder the burden to prove secondary meaning or non-functionality. See *Goscicki v. Custom Brass & Copper Specialties, Inc.*, 229 FSupp2d 743 (E.D.Mich. 2002) ("Registered marks are presumed to be distinctive and non-functional.")

This article is reprinted with permission from the February 14, 2007 edition of the NEW YORK LAW JOURNAL. © 2007 ALM Properties, Inc. All rights reserved. Further duplication without permission is prohibited. For information, contact ALM Reprint Department at 800-888-8300 x6111 or visit www.almreprints.com. #070-02-07-0027