JOHN T. WILLIAMS (JTW-9928)
JASON NASH (*admitted pro hac vice*)
HINKHOUSE WILLIAMS WALSH LLP
180 North Stetson
Suite 3400
Chicago, IL 60601
(312) 784-5411
(312) 784-5491 (fax)

GREGORY T. CASAMENTO (GTC-5273)
LOCKE LORD BISSELL & LIDDELL LLP
885 Third Avenue
New York, NY 10119
(212) 947-4700
(212) 947-1202 (fax)

*Attorneys for Defendant*
*Mouawad USA, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
VAN CLEEF & ARPELS, S.A., and                 07-CV-11476 (SAS)
VAN CLEEF & ARPELS, INC.,

                                    Plaintiffs,

       vs.

HEIDI KLUM GmbH and
MOUAWAD USA, INC.

                                   Defendants.
---------------------------------------------------------------- x

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant Mouawad USA, Inc. ("Mouawad"), by and through its undersigned counsel, respectfully submits this Reply in Support of its Motion to Dismiss the Amended Complaint of Plaintiffs Van Cleef & Arpels, S.A. and Van Cleef & Arpels, Inc. (collectively, "VCA") for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

This is a product design trade dress case – in which VCA impermissibly now seeks all-encompassing jewelry trade dress ownership of the generic "symmetrical quatrefoil shaped ornament." VCA's Amended Complaint is defective on its face and should be dismissed as a matter of law.

VCA's *Memorandum of Law in Opposition of Defendant's Motion to Dismiss* (hereinafter "Response") fails to specifically plead a protectable product design trade dress. VCA's pleading of the mere symmetrical quatrefoil shape as its trade dress is far too broad and vague, and, if recognized, would grant VCA all-encompassing exclusivity in the jewelry marketplace over a generic shape. The symmetrical quatrefoil shape broadly pled in the Amended Complaint is a common, generic shape not protectable as a product design trade dress or as a family of trade dresses.

VCA conclusorily attempts in its Response to alternatively recast its product design trade dress, without more, as an unregistered trademark, presumably to avoid the heightened requirements of and scrutiny to product design trade dress. VCA cites no legal authority for this novel pleading, instead relying on only the opinion of its counsel that Second Circuit authority deciding the issue is flat wrong.

**ARGUMENT**

I.  **VCA FAILS TO SPECIFICALLY PLEAD AN ACTIONABLE PRODUCT DESIGN TRADE DRESS**

VCA concedes that it has specifically pled its Alhambra product design trade dress in its other suit before this Court, yet continues to ignore this pleading requirement in the present case. Instead, VCA vaguely alleges a new drastically expanded, all-encompassing product design trade dress which includes each of its at least six (6) different Alhambra jewelry lines amounting only to the idea of a conventional and generic geometric shape – the symmetrical quatrefoil. In so doing, VCA is impermissibly attempting to plead a collective product design trade dress for each of its Alhambra lines which fails to support a claim for any of them individually.

Not only does VCA misconstrue the applicable law, the alleged mark remains so overly broad and generic such that it cannot be construed as a protectable product design trade dress. VCA impermissibly attempts to unify its at least, six (6) different and distinct Alhambra lines under one trade dress "family" using this one common, generic product design element. For these reasons, the Amended Complaint fails as a matter of law to properly allege a claim for product design trade dress infringement under the Lanham Act.

   A. **VCA Fails To Meet the Strict Pleading Requirement to Specifically Articulate Product Design Trade Dress(es) In Its Different Alhambra Lines.**

The court exercises "particular caution" when extending protection to a claimed product design trade dress because product design almost invariably "is intended not to identify the source" of the product, "but to render the product itself more useful or more appealing." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114-115 (2d Cir. 2001) ("*PAJ*") (*citing Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 213 (2000) ("*Samara*")). See also *Malaco Leaf v. Promotion in Motion, Inc.,* 287 F. Supp. 2d 355, 363 (S.D.N.Y. 2003); *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 380 (2d Cir. 1997); *Jeffrey Milstein*, *Inc. v. Greger,*

2

*Lawlor, Roth, Inc.*, 58 F.3d 27, 33 (2d Cir. 1995). Furthermore, "granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves." *PAJ* at 115. Thus a plaintiff asserting product design trade dress, as opposed to trademark or trade dress packaging, must overcome "additional hurdles" – for example, a product design trade dress cannot be inherently distinctive and, therefore, secondary meaning must be pled and proved. *Samara* at 215; *PAJ* at 115.

The scrutiny given to allegations of product design trade dress infringement in an **entire line of products** "applies with equal or greater force." *PAJ* at 116 -17 (emphasis added). Not only must Plaintiff plead that the "overall look" in each separate product is "consistent" but because concern for protecting competition in this context is "particularly acute," *PAJ* at 116-17, the focus on the overall look of a line of products does not permit a plaintiff to dispense with *an articulation of the specific elements* which comprise its distinct product design trade dress. *Id.* at 117 (emphasis added). As the Court held in *PAJ*, a vague and indefinite description of a trade dress is impermissible because (1) different jurors viewing the same line of products may conceive the trade dress to be composed of different features; (2) no fact finder can properly evaluate issues of secondary meaning, over-breadth or functionality "without knowing precisely what the plaintiff is trying to protect;" (3) the plaintiff's inability to articulate a precise definition may indicate that the alleged "product trade dress" is overbroad in that it is merely an idea or a generic concept; and (4) a narrowly tailored injunction cannot be framed. *Id.*; *see also* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §§ 8:3 (4th ed. 2008) ("*McCarthy*"). All of these concerns are implicated by VCA's continued failure to specifically allege product design trade dress for any of the at least six (6) Alhambra lines.

3

VCA claims in their Response they do not have to plead with the specificity required by *PAJ*, and other binding precedent, as long as they claim "one common design element" that is featured throughout the Alhambra line. (Response at 8). Yet in support of this claim, VCA points only to one product design trade dress infringement case. *See Am General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796 (7th Cir. 2002). In fact, *AM General* supports the very principle VCA attempts to rebut. VCA conveniently fails to state in its Response that the *AM General* decision went out of its way to question whether the product design trade dress at issue in that case was sufficiently defined even though the matter could not be addressed on appeal. *See Id.* at 815 n.6 ("The Court is concerned about whether a definition that includes 'seven to ten' vertical slots is sufficiently specific").

Every other authority VCA uses to support its claim deals instead with product packaging trade dress, not product design trade dress. *See* McCarthy § 8.1; *Hershey Foods Corp. v. Mars, Inc.*, 998 F. Supp. 500, 517-518 (M.D. Pa. 1998) (weighing the validity of the plaintiff's trade dress rights in its Reese's Peanut Butter Cup product package). Interestingly, VCA's argument is at odds with its own counsel's article on this subject, attached to the Response, where counsel clearly states that "there is a difference as to natural consumer perception between word marks and product packaging on the one hand and product design on the other." ([Dkt. #28-3], at 2). Consumers are "'predisposed to regard [the former] as indication of the producer . . . the latter, however, 'consumer predisposition to equate the feature with the source does not exist'." *Id.* Clearly, a plaintiff must allege more than one common, generic element of its product design to qualify for trade dress protection. *See Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F. Supp. 2d 506, 512 (S.D.N.Y. 2003) ("*Golden Treasure*"); *see also Cartier v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 222-24 (S.D.N.Y. 2004).

The prospect of an impermissible monopoly is even more acute given that VCA already has plead in its other suits before this Court a more specific product design trade dress for at least its Vintage Alhambra line (from which it seemingly seeks to escape in this case). *See Van Cleef & Arpels Logistics, S.A., et al. v. Landau Jewelry, et al.,* No. 07-CV-564 (SAS); *Van Cleef & Arpels Logistics, S.A., et al. v. Zirconmania, Inc.,* No. 07-CV-565 (SAS); *Van Cleef & Arpels Logistics, S.A., et al. v. JJ Gold Int'l, Inc.,* No. 07-CV-1445 (SAS) (consolidated as Case No. 07-CV-564) ("*Landau*"); *Cartier et al. v. Elena Castaneda and Ejeweler d/b/a Overstockjeweler.com*, No. 07-7862 (SAS), consolidated with *Yurman Studio, Inc. v. Elena Castaneda and Ejeweler LLC d/b/a Overstockjeweler.com*, No. 07-1241 (SAS). VCA could not – and did not attempt to – in its other suits sustain a product design trade dress claim for any of these at least six (6) different Alhambra lines individually by the impermissibly broad and generic allegations here. VCA even admitted in *Landau* that the "Alhambra Trade Dress" is composed of "several lines of jewelry." However, in the present case, the VCA continues to inappropriately unify at least six (6), and possibly more, different Alhambra product lines into one expansive and generic product design trade dress.

The obvious consequence of this artful, all-encompassing pleading is that VCA is attempting to bootstrap those Alhambra designs that are junior to the Heidi Klum Clover Collection products and secure the very market monopolization this Court rejected in *PAJ*. *See PAJ* at 115. As a matter of law, this is an impermissible product design trade dress pleading. Furthermore, when addressing this issue of inconsistent pleading in its Response, VCA fails to cite a single case that supports its position. *See* (Response at 16-17). VCA must allege – consistent with other suits in this Court – the specifically articulated elements of its product design trade dress for each of its Alhambra lines.

5

### B. VCA's Alleged Product Design Trade Dress Is Nothing More Than An Impermissible Common Generic Shape.

The symmetrical quatrefoil shape broadly pled in the Amended Complaint is a conventional, generic shape and is not protectable as product design trade dress. Accordingly, in the absence of a specific articulation of the claimed protected design elements of each of the different Alhambra lines, VCA's Amended Complaint must be dismissed as a matter of law.

VCA wholly fails in their response to contest that the generic quatrefoil shape broadly pled in the Amended Complaint is generic and not protectable as a product design trade dress. The alleged design elements may not obtain protection if they describe "generic" product designs – those that refer to a "genus" of products of which the particular product seeking protection is a species – regardless of any showing of secondary meaning. *See PAJ* at 115; *see also Shevy Custom Wigs, Inc. v. Aggie Wigs*, No. 06 Cv. 1657, 2006 WL 3335008, *4-5 (E.D.N.Y. Nov. 17, 2006); *Malaco Leaf v. Promotion in Motion, Inc.,* 287 F. Supp. 2d 355, 363 (S.D.N.Y. 2003).

It is telling that VCA has wholly failed in its Response to address *Malaco*. In *Malaco* the court held that the Defendant's "Swedish fish" candy design was not protectable due to its "generic shape and extensive third-party use." *Id*. at 365. Moreover, the Court found that the design was not "used to identify source, but rather to render the product itself more appealing." *Id*. at 364. Similarly, VCA's alleged product design trade dress is nothing more than a generic, geometric shape used often in the jewelry business to make products more aesthetically pleasing.

VCA also disingenuously attempts to confuse the issues by arguing that its quatrefoil product design trade dress "does not fit in the definition of 'generic' used in *trademark cases*." (Response at 13) (emphasis added). The Court exercises a higher scrutiny for product design trade dress claims than trademark claims because (1) product design almost invariably serves purposes other than source identification and (2) a monopoly right in the design of a product

6

itself is more likely to preclude competition. *PAJ* at 114-115.  VCA may not muddle the definitions of trademark and product design trade dress in order to avoid the "legal hurdles" that "both Congress and the Supreme Court have created."  ([Dkt. #28-3], at 3).

### C. VCA's Impermissible Product Design Trade Dress Cannot Be Recast As "A Family of Trade Dresses."

Family product design trade dress protection places a "significant challenge" before a plaintiff who must show "that the appearance of its several products is sufficiently distinct and unique to merit protection as a recognizable trade dress." *Regal Jewelry Co., Inc. v. Kingsbridge Int'l, Inc.*, 999 F. Supp. 477, 486 (S.D.N.Y. 1998) (*quoting Landscape Forms*, at 380-381). This burden requires that the plaintiff "articulate a specific trade dress," and then "demonstrate that it has, in fact, consistently used that trade dress." *Id.*; *AM General Corp.*, 311 F.3d at 814-815. Courts consider these broader family trade dress claims with an "acute" concern for protecting competition because "any remedy could potentially cover a wide range of products." *Regal Jewelry Co., Inc.*, 999 F. Supp. at 486.

VCA has not sufficiently articulated a specific product design family trade dress to satisfy this "acute" concern. Rather, VCA merely has alleged one generic element of its purported product design, the quatrefoil shape, and is attempting to take refuge in pleading a "family" of product design trade dress marks because that one shape is commonly used throughout its Alhambra product lines.  Whether this shape is consistently used throughout the Alhambra line is irrelevant because a plaintiff may not plead a family of marks when the only claimed common element is, in fact, itself impermissibly generic and overbroad to plead a protectable trade dress.  *See Landscape Forms*, 113 F.3d at 380; *see also AM General Corp.*, 311 F.3d at 816 ("Merely adopting and using . . . a group of marks with a common feature does not create a family of marks, even if the user intended to create a family").

7

VCA doesn't even attempt to plead separate trade dress claims for each of its, at least, six (6) different Alhambra lines as the Court instructed in *Cartier*. *See Cartier*, 348 F. Supp. 2d at 222-24; *see also PAJ* at 117-18 (rejecting plaintiff's attempt to combine eighteen (18) separate jewelry pieces into a single product line with one trade dress); *Golden Treasure*, 275 F. Supp. 2d at 510-511 (rejecting the defendant's motion for summary judgment because the plaintiffs "no longer seek to protect [an] entire line of products as a singular trade dress."). Put simply, VCA is pleading a family of marks across all of its Alhambra lines in a deliberate attempt to bootstrap a product design trade dress that could not stand for any single Alhambra line.

VCA attempts to confuse this issue by, once again, citing a trademark case to support its product design trade dress family claim. (Response at 10) (*citing McDonalds Corp. v. McBagel's, Inc.*, 649 F. Supp. 1268 (S.D.N.Y 1986); *Quality Inns Int'l, Inc. v. McDonald's Corp.*, 695 F. Supp. 198, 221-22 (D. Md. 1998)). The standards applied in these cases offer little guidance as the courts exercise a higher scrutiny in upholding product design trade dress protection – at issue in the present case – than in trademark cases. *Samara* at 215.

## II.     PLAINTIFFS FAIL TO ALLEGE AN UNREGISTERED TRADEMARK

VCA's Response merely reiterates in conclusory fashion that the ALHAMBRA QUATERFOIL DESIGN SYMBOL is "an unregistered design trademark" and is "inherently distinctive." (Am. Comp. ¶ 22.b.) These allegations must be stricken as the Amended Complaint fails to make a single factual allegation that could support an unregistered trademark. VCA's attempt to collapse its product design trade dress claim, without more, into an unregistered trademark claim seeks to avoid the heightened pleading requirements for product design trade dress and reveals the claim as the very "marginal" claim cautioned against in the article attached to VCA's Response. ([Dkt. #28-3] , at 3).

Product design trade dress allegations, without more, do not suffice to allege unregistered trademark infringement. Trade dress is defined by the Second Circuit "as the total image of a good as defined by its overall composition and design, including size, shape, color, texture, and graphics." *Louis Vuitton Malletier v. Dooney & Burke, Inc.*, 454 F. 3d 108, 115 (2d Cir. 2006) (*citing Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 168 (2d Cir. 1991)). "By way of distinction, the Lanham Act defines a trademark as 'any word, name, symbol, or device, or any combination thereof' which is intended to be used by a person 'in commerce… to identify and distinguish his or her goods… from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." *Id*. (*quoting* 15 U.S.C. § 1127). Unlike a trademark, product design trade dress - like the one alleged by VCA in the present case - cannot be inherently distinctive and requires a showing of secondary meaning for protection.

The article attached to VCA's Response contradicts the very argument it is attempting to make. The article affirmatively states that "both Congress and the Supreme Court have created legal hurdles for [trade dress law] which are not in place for all trademarks," and admits that litigants "in marginal cases seek to avoid these hurdles." ([Dkt. #28-3], at 3). VCA has failed to cite any authority or facts that would allow the Court to frame the Plaintiff's product design trade dress as a trademark. VCA has wholly ignored case law defining the differences between product design trade dress and trademark. *See Malletier*, 454 F. 3d at 115; *see also Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 547 (6th Cir. 2005) ("[T]rademark and trade dress are two distinct concepts under the Lanham Act.").

VCA has failed to specifically identify its alleged trademark. VCA has merely pointed to its trade dress allegations and conclusorily declared that its alleged trade dress is simultaneously its trademark. "To be valid and protectable, a mark must be capable of distinguishing the

9

products it marks from those of others." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999). VCA has not alleged a single fact demonstrating that its alleged trademark distinguishes its products from those of its competitors.

Even if VCA's Response could be construed to allege facts sufficient to assert an unregistered trademark cause of action, and that the unregistered trademark has been sufficiently identified, it is still evident that the Response does not – and cannot – allege that VCA consistently used a single unregistered trademark. "Consistent and repetitive use of a designation as an indicator of source is the hallmark of a trademark." *Rock and Roll Hall of Fame Museum, Inc. v. Gentile*, 134 F.3d 749, 755 (6th Cir. 1998). It is, therefore, not surprising that VCA has failed to plead any facts indicating that its alleged mark has ever been used by VCA as a mark, let alone used with sufficient consistency for the court to recognize it as an unregistered trademark. Accordingly, dismissal with prejudice of the Amended Complaint's unregistered trademark claim is compelled.

## **CONCLUSION**

For the foregoing reasons, Defendant Mouawad USA, Inc., respectfully requests that this Court enter an Order:

    a.    Dismissing VCA's Amended Complaint in its entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure;

    b.    Granting Mouawad its attorneys' and fees and costs, and

    c.    For such other relief this Court deems just and proper.

| | |
|---|---|
| Date: June 23, 2008 | s/John T. Williams |

JOHN T. WILLIAMS (JTW-9928)
JASON NASH (*admitted pro hac vice*)
HINKHOUSE WILLIAMS WALSH LLP
180 North Stetson
Suite 3400
Chicago, IL 60601
(312) 784-5411
(312) 784-5491 (fax)
jwilliams@hww-law.com

GREGORY T. CASAMENTO (GTC-5273)
LOCKE LORD BISSELL & LIDDELL LLP
885 Third Avenue
New York, NY 10119
(212) 947-4700
(21) 947-1202 (fax)
gcasamento@lockelord.com

*Attorneys for Defendant*
*Mouawad USA, Inc.*

**CERTIFICATE OF SERVICE**

I, John T. Williams, hereby certify that on this 23rd day of June, 2008, a copy of the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT OF DEFENDANT MOUAWAD USA, INC.** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_s/John T. Williams_____